# Court of Appeals.

January 10, 1899.

## PEOPLE v. FRANK DUNN.

**1. JURORS—SPECIAL ACT.**

Chapter 378 of 1896 has but the one direct object of facilitating the administration of justice in criminal cases, by providing for the impaneling of a fair, competent and impartial jury, without the difficulty and delay with which the procedure is so frequently attended.

**2. SAME—CONSTITUTAL LAW.**

Every intendment shall be in favor of the constitutionality of legislative enactments.

**3. SAME.**

The Constitution does not secure to the defendant any particular mode of jury trial, nor any particular method of jury selection.

**4. SAME.**

There is no inherent right, superior to legislative regulation, to any particular mode by which the panel of jurors is returned from which the twelve are to be chosen to sit.

**5. SAME.**

The mode of selecting a jury is within legislative regulation and it is not necessary, in order to preserve the right of trial by jury, to secure any particular mode of designating jurors, however such mode may have been previously in force.

**6. SAME.**

The act, providing for a special jury in criminal cases in counties having a population of 500,000 or more, and for the mode of selecting such jurors and also creating a special jury commissioner for each of such counties, is a lawful exercise of legislative power.

**7. SAME.**

The term "due process of law," used in the Constitution, means the law in its regular course of administration through courts of justice.

**8. SAME.**

If a defendant is secured a trial before an impartial jury taken from the county and conducted according to the law of the land, he has had all the benefits of the constitutional guaranty.

**9. SAME.**

No right of appeal is guaranteed by the Constitution, and such a right is entirely within the legislative judgment.

**10. SAME.**

An act providing for selecting jurors, which limits its operation to counties containing a population of 500,000 or more, is not violative of

the constitutional provision against private or local bills relating to grand or petit jurors.

APPEAL from judgment, charging defendant with murder in the first degree, and from an order granting a special jury.

The defendant was charged with the crime of murder in the first degree, and, upon being arraigned, pleaded not guilty. Thereafter the people applied for a special jury to try the issue, under the provisions of chapter 378 of the Laws of 1896. The application was granted by the appellate division of the supreme court in the First department. Leave to appeal to this court was then granted, upon the ground that a question of law was presented which ought to be here reviewed, and the following question was certified, to wit: "Is the act of the legislature embodied in chapter 378 of the Laws of 1896, providing for a special jury in criminal actions in certain cases, a valid and constitutional exercise of legislative power?" The title of the act is as follows: "An act providing for a special jury in criminal cases in each county of the state having a certain population and for the mode of selecting and procuring such special juries; also creating a special jury commissioner for each of such counties and regulating and prescribing his duties." The first six sections of the act provide, with respect to the manner of appointment of special jury commissioners, "for each county of the state having a population of 500,000 or more," their terms of office, compensation, etc., and that they shall be furnished by the commissioners of jurors of the counties with lists of persons liable to serve as trial jurors, from which to select special jurors, as the justices of the appellate division shall direct, etc. Section 7 prescribes the qualifications for each special juror, namely: He must be: "(1) A male citizen of the United States of at least ten years' standing, and a resident of the county. (2) Not less than thirty nor more than seventy years of age. (3) In possession of his natural faculties, and not infirm. (4) Free from all legal exceptions; of good character; of approved integrity; intelligent; of sound judgment; able to read and write the English language understandingly; and well informed; and he shall have an adequate knowledge of the duties of a juror." Section 8 provides that the commissioner shall not select as a

special juror any person by law disqualified or exempt from service as a trial juror ; nor one who has been convicted of a criminal offense, or found guilty of fraud or other misconduct, by the judgment of any civil court; nor one whose conscientious opinions are opposed to the death penalty; nor one who doubts his ability to render an impartial verdict, uninfluenced by newspaper reading or hearsay, nor one whose opinions would prevent his finding a verdict of guilty upon circumstantial evidence; nor one whose prejudice against a law of the state would preclude his finding a defendant guilty of violating such law ; nor one whose prejudice against any particular defense would prevent his giving a fair and impartial trial upon its merits ; nor one who avows that he cannot in all cases give to a defendant who fails to testify as a witness in his own behalf the full benefit of the statutory provision that no presumption is thereby created against him.    Section 9 empowers the commissioner with respect to inquiries and examinations into qualifications of special jurors, etc.    Sections 10, 11, and 12 provide for the keeping of a list of the jurors selected, for the preparation of suitable ballots, and for the exemption of special jurors from service as ordinary jurors, etc.    Section 13 provides that either the district attorney or the defendant may apply to the appellate division for a special jury, where it is made to appear " that a fair impartial trial of such issue cannot be had without a special jury, or that the importance or intricacy of the case requires such jury, or that the subject-matter of the indictment has been so widely disseminated or commented upon by the press or otherwise as to induce the belief that an ordinary jury cannot, without delay and difficulty, be obtained to try such issue, or that for any other reason the due, efficient and impartial administration of justice in the particular case requires that the trial of such issue be had by a special jury."    The other sections of the act are unnecessary to be referred to particularly, as they relate to the machinery for the drawing of special jurors and for the formation of a special jury, except that section 19 provides that the rulings of the trial court in admitting or excluding evidence upon the trial of any challenge for actual bias shall be final.

David Mitchell, for appellant.

Asa Bird Gardiner and Charles E. Le Barbier, for the People.

GRAY, J. (after stating the facts).    I think that the question which has been certified to us should be answered in the affirmative, and, were in not for the general interest and the importance which it possesses, we might well leave the discussion with the opinion as delivered at the appellate division.    It must be perfectly apparent that the act has but the one direct object, of facilitating the administration of justice in criminal cases, by providing for the impaneling of a fair, competent, and impartial jury, without the difficulty and delay with which the procedure is so frequently attended.    If it can be upheld as a valid exercise of the legislative power, it will confer no incon siderable boon upon the community,—a consideration which comes somewhat to the aid of the rule that every intendment shall be in favor of the constitutionality of legislative enactments.

The appellant objects to this act as being unconstitutional and invalid upon several grounds.    He charges, that it is violative of the right of trial by jury ; that it creates two classes of jurors and discriminates unequally ; that it delegates judicial powers to the special jury commissioner to determine the qualifications of the jurors ; that it takes away the right of appeal from the ruling of the court on a challenge to the special juror ; and that it violated the constitutional provision against the passage of private and local bills.

Is the statute violative of the right of trial by jury, as secured by the constitution of trial by jury, as secured by the constitution of the state ?    That instrument provides that " the trial by jury in all cases in which it has been heretofore used shall remain inviolate forever."    Article 1, § 2.    This provision, as well as that which secures a person against deprivation of life, liberty, or property without " due process of law " (Id. § 6), were imposed by the people as restraints upon the power of the legislature.    The guaranty of the trial by jury is substantially the same as it stood in the original constitution, and its inser-

tion simply preserved the right as it had been exercised before the adoption of the organic law of the state. This act does not appear, upon its face, to be violative of any constitutional provision; but, upon looking back of the adoption of a constitution and into the usages of the English people under the common law, do we find anything which would lead us the belief that the creation of a system of special juries for the trial of causes is subversive of personal and inalienable rights? I find nothing, and we are certainly able to point out that special juries were known to the common law from early times. The institution of trial by jury is entitled to all the reverences which a custom deserves that is so historically interwoven with the growth and development of the rights of the English people. But it should be no superstitious reverence, warping and prejudicing our inquiry into the true significance and extent of the custom which has become a constitutional right. The system of trial by jury had its origin, through many sources, in the early institutions of the English people, and the provision in Magna Charta that no man should bed eprived of his life, liberty, or property, or be condemned, " but by lawful judgment of his peers," has been generally credited with establishing, or defining, the right of trial by jury. The correctness of this belief is somewhat open to doubt, inasmuch as the provision more probably referred to the existing custom of a trial by peers. 3 Reeve, Eng. Law, 247; Forsyth, Jury Tr. 108. In Reeves' work it is said that trial by jury was not then known. But, however that may be, it did guaranty a procedure in trials, from which, it is generally agreed, eventually sprang the modern jury system as practiced under the common law of England. That the jury should be composed of twelve persons was due to the fact that twelve was a favorite number in the earliest times for various kinds of legal ceremonies or functions, and, for its great antiquity, was held in reverence. 1 Reeve, Eng. Law, 84 et seq. It is not without interest to observe that in the earlier times the jurors were witnesses, who pronounced upon their knowledge of the facts, and it was not until the times of Edward VI. and Queen Mary that the old procedure was softened by the selection of jurors dispassionate and indif-

ferent between the parties, before whom witnesses were called
to inform their consciences. 1 Reeve, Eng. Law, 271. That
special juries were known to the common law is shown in
Forsyth's work on Trial by Jury (page 173), and an instance
is cited, in 1450 (29 Hen. VI.), of "a petition for a special jury;
that is, jurors' who dwell within the shire, and have lands and
tenements to the yearly value of xx£,' to try a plea which it
was supposed might be pleaded in abatement on a bill of ap-
peal of murder." In Rex v. Edmonds, 4 Barn. & Ald. 471,
which was a criminal case tried before a special jury, it was ob-
served of special juries by Chief Justice Abbott that it had
not "hitherto been ascertained at what time the practice of
appointing special juries for trials at *nisi prius* first began,"
and that it was "introduced for the better administration of
justice, and for securing the nomination of jurors duly qualified
in all respects for their important office. It certainly prevailed
long before St. 3 Geo. II. c. 25, and was recognized the declared
by that statute, which refers to the former practice." See, also,
Thomp. & M. Jur. § 12. Under the provisions of St. 6 Geo.
IV. c. 50, the special jurors' list was made from the ordinary
jurors' book, and from among those described in that book,
"as esquires, or as persons of higher degree, or as bankers or
merchants." There were statutes which, in the reigns of Henry
VIII. and of Phillip and Mary, authorized the impaneling of
bystanders, if a sufficient number of jurors returned by the
sheriff did not appear, and such a practice was very early author-
ized in the United States courts. See Rev. St. U. S. §§ 804,
805.

From this brief inquiry, we would seem to be justified in
saying that special, as well as struck, juries resorted to at com-
mon law, and that the mode of selection of jurors was a matter
for legislation.

It is to be observed that our constitution does not secure to
the defendant any particular mode of jury trial, nor any particu-
lar method of jury selection. It secures, simply, the right to a
trial by a common-law jury of twelve men. Wynehamer v.
People, 13 N. Y. 378, 458. Jude Cooley, in his work on Con-
stitutional Law (3d Ed. p. 321), says: "By 'Jury' in the
constitution is meant a common-law jury. This is a tribunal

of twelve persons, impartially selected for the purposes of the trial, in accordance with rules of law previously established." In Stokes v. People, 53 N. Y. 164, 173, it was held that the mode of procuring an impartial jury " is regulated by law, either common or statutory, principally the latter ; and it is within the power of the legislature to make, from time to time, such changes in the law as it may deem expedient, taking care to preserve the right of trial by an impartial jury." It was further said that " the end sought by the common law was to secure a panel that would impartially hear the evidence, and render a verdict thereon uninfluenced by any extraneous considerations whatever." In Walter v. People, 32 N. Y. 147, it was held that the constitutional provision carried no limitation of, or restriction upon, the legislative power, except as to the right guarantied, viz, a jury trial in all cases in which it had been used before the adoption of the constitution. In the same case it was considered that, even if the right to peremptory challenges were a right given by the common law, it could, nevertheless, be restrained, or withheld altogether, at the legislative will. In People v. Petrea, 92 N. Y., at page 143, it was held competent for the legislature to regulate the mode of selecting and procuring grand jurors (citing Stokes' Case),—an institution equally regarded as one of the securities of civil liberty.

The system of trial by jury, as it grew up at common law, had its root in the endeavor to secure to a defendant a trial of his cause by a fairly-selected body of his equals, rather than by his rulers, or by magistrates, or by persons designated by them, and the usage finally obtained of taking twelve jurymen from the vicinage to judge upon the facts developed by the evidence of witnesses. The right was conceded to the citizen of having the judgment of an impartial committee, or body, of his fellow citizens, upon charges involving his life, or his liberty, or his property, and two elements became essential ingredients of the right, viz. : That the jurors should be twelve in number ; and that they should be capable of deciding the cause fairly and impartially. I know of no authority, and I can perceive no good reason, for holding that there is some inherent right, superior to legislative regulation, to any particular mode by which

the panel of jurors is returned from which the twelve are to be chosen to sit. The ordinary reading of the constitutional provision does not suggest it, and the decisions of this court in the cases referred to negative the idea. That the mode of selecting a jury is within legislative regulation, and that it is not necessary, in order to preserve the right of trial by jury, to preserve any particular mode of designating jurors, however such mode may have been previously in force, is a doctrine which has received the support of the decisions of courts in other jurisdictions. Lommen v. Gaslight Co., 65 Minn. 196, 68 N. W. 53 ; Perry v. State, 9 Wis. 19 ; State v. Slover, 134 Mo. 607, 36 S. W. 50 ; and see, upon the question of struck juries, Fowler v. State, 58 N. J. Law, 423, 34 Atl. 682.

Whether, therefore, we examine the question in the light of authority, or of reason, we find that the object aimed at under the common law, and which the constitutional provision must be deemed to have intended is the obtaining of an impartial jury of twelve men, and how that shall be accomplished is a matter within legislative regulation. Of what consequence is it that the trial jury is to be taken from a particular body of persons liable to serve as jurors, which the legislature has provided to be created out of the general body of the county, if the jurors who compose it, in fact, represent the citizens of the defendant's vicinage ? Will it be any the less an impartial and a representative jury ? While the ordinary commissioner of jurors is to draw from the citizens of the county and pass upon their qualifications and exemptions, the special commissioner of jurors provided for by this act is invested with additional power to facilitate the administration of justice by sifting out from the general body drafted, and eliminating therefrom those who should not sit, or who would be disqualified from acting, in the criminal branch of the court, whether from the standpoint of the prosecution or of the defendant.

Nor can it be rightly said that the defendant is denied that " due process of law " which the constitution guaranties to him. There is no peculiar magic in these words. They were used in Magna Charta in the same sense as the words, " by the law of the land." 2 Co. Inst. 50. They mean law in its regular course

of administration through courts of justice, and they secure to the defendant the benefit of those fundamental rules of the common law by which judicial trials are governed. People v. Sickles, 156 N. Y. 547, 51 N. E. 288. If the law of the state has made provision for the choosing of an impartial jury for the trial of a defendant, his trial is none the less by due process of law because the jury is composed of persons taken from the body selected by the special commissioner of jurors from the general list, as being generally free from those defects which must, or should, cause them to be rejected, either by the prosecution or by the defendant. That official merely exercises similar functions to those of the ordinary commissioner of jurors, and their exercise is restricted to the list as furnished to him by the latter. As it was observed in the opinion below, " the ordinary jury commissioner does not select the particular panel which is summoned to try a man. Still less does the special jury commissioner. Nor does the latter exercise any judicial function as to the qualifications of the twelve men who may ultimately be chosen to serve. His work is preparatory and tentative. In the end, the court alone exercises the judicial function of deciding upon the qualifications of the jurors, and it does so entirely unhampered by the previous examination and inquiry of the commissioner." I think that we may dismiss the objections that the defendant is deprived by this act of due process of law, or that it subjects him to any unequal discrimination, with the remark that, if he is secured a trial before an impartial jury taken from the county and conducted according to the law of the land, he has had all the benefit of the constitutional guaranty. No substantial right is infringed upon ; for, as it is suggested in the opinion below, neither the letter nor the spirit of the constitution guaranties to him a chance to select an ignorant or partial jury.

It is quite to misapprehend the object effected by this act to say that it creates two classes of jurors, and therefore discriminates adversely, in its operation, upon those who are to be tried in the criminal branch of the court. The defendant is to be tried by twelve of those men, taken from the body of the county, whose general qualifications to sit in criminal cases have been,

by the machinery of law, more particularly ascertained, but who are still to be subjected to judicial inquiry as to their qualifications and impartiality, as in the case of an ordinary panel. We might assume that there were, in a sense, two classes of jurors provided for in the trial of civil and criminal cases, and still find nothing in the point which affects the validity of the legislation. As we have seen, special juries were known to the common law, and that the legislative body has the power to regulate the method of selecting jurors, within the limitation only that the right to a trial by an impartial jury is not taken away, has been repeatedly recognized in the courts.

Nor are any judicial powers delegated to the special jury commissioner. He exercises the same ministerial power that the ordinary commissioner of jurors does, in examining the qualifications of those liable to serve as jurors. He is the official created by the law, upon whom is devolved the duty of eliminating from the jury list persons declared by law to be unfit, or disqualified, to sit in criminal cases, and of having in readiness, for the time when a special jury is ordered by the court, for the better administration of justice, a list from which a panel of fit and impartial jurors may be chosen. To say, as the appellant does, that the special jury commissioner has the power to select the jurors who are to determine the case, is as incorrect as it is to say that the qualifications of each class of jurors are entirely different. In the first place, all that that official does, or can do, is to prepare such a list of jurors, from the general list of the county, as will enable, not only the prosecution, but the defense, to choose a jury for the impending trial, without that difficulty and delay which would be occasioned by the examination and necessary rejection of persons on the county list who are unfit to serve, morally, mentally, or physically. In the second place, while it is, in a sense, true that the persons upon the two lists are differently qualified with respect to service in the criminal branch, it would be incorrect to regard that difference as other than one based upon their fitness for the jury service demanded. The argument that the defendant has more chances for success, or more rights, before a jury drawn from the general list, is incomprehensible, unless upon the theory

that he has some inherent or substantial right to the chance of making his defense before a jury composed of men whose ignorance, or partiality, or mental constitution, might result in a disagreement, if not in an acquittal. That would be reducing the constitutional guaranty to an absurdity.

As to the objection that the right to appeal from the rulings of the trial court upon challenges is taken away, the opinion below has sufficiently answered it in holding that no right of appeal is guarantied by the constitution, and that such a right is entirely within the legislative judgment. The defendant's right to challenge is not taken from him, as in the Nevada case cited by him (State v. McClear, 11 Nev. 39), but only the privilege of an appeal from the rulings of the trial judge.

One more objection remains to be considered, which is that the act is repugnant to section 18 of article 3 of the constitution, providing that the legislature shall not pass a private or local bill as to " selecting, drawing, summoning, or impaneling grand or petit jurors." The first section of the act makes it applicable to " each county of the state having a population of five hundred thousand or more." The general operation of the law is subject, therefore, but to the one restriction, that the county where it is to apply must have a certain population. Within the cases of In re Church, 92 N. Y. 1, and of Ferguson v. Ross, 126 N. Y. 459, 27 N. E. 954, this must be regarded as a general and not a local act, although, by reason of the limitation based on population, only a limited number of counties of the state may receive its benefit. The Henneberger Case, 155 N. Y. 420, 50 N. E. 61; affords no support to the appellant's contention. It was decided upon its special circumstances, as it was perfectly proper to do. People v. Newburgh & S. P. R. Co., 86 N. Y. 6. The act in that case was a most palpable device to evade the constitutional prohibition against passing local bills for laying out highways. It contained seven conditions, which had all to be met before it could become operative. The combination of restrictions was unprecedented in any other act, and was so remarkable as to practically localize the operation of the law, and so we held that it would be absurd to call it a general law. What was said in the course of the opinion sufficiently

meets the point now made as to its bearing upon the present case, viz. that, " in so far as acts have been made, by their terms, applicable to counties, cities, towns, or villages, according to their limits of population, or to the cases or towns which adjoin cities of a certain population, although, by strict construction, they might be deemed to contravene the section of the constitution, they will be saved from condemnation by the rule of construction which determines their validity as general laws upon a consideration of the special circumstances, and declines to view them as only local, because by reason of a limitation based on population, or some condition having reference to population, but one locality, apparently, may actually receive their benefits." There is nothing in this act to limit its general application in all cases where the population of the county has attained a certain size, and such a condition might reasonably be considered as possible generally. As it was pointed out in the Henneberger Case, there are good reasons why, in a general law, reference should be had to conditions of population. I think that the act in no respect operates to the prejudice of the defendant, and I am unable to see any good reason for pronouncing the legislation invalid. The question certified to this court should be answered in the affirmative, and the order appealed from therefore affirmed.

All concur, except O'BRIEN, J., not voting.

Order affirmed.

## NOTE TO COMPETENCY OF JURORS.

DECISION.—Decision of trial judge, sitting as statutory trior of challenges, is conclusive. Johnson v. State (N. J. Sup.), 35 A. 787.

QUALIFIED OR DISQUALIFIED.—Jurors who state, on their *voir dire*, that they can give the defendant a fair and impartial trial, according to the testimony and the law as given to them by the court, and have no opinion on, or prejudice in the case, are not disqualified, to try an indictment for assault, though while the court was in session and before the trial, the defendant shot and killed the assaulted person on the court house square and the jurors were at the scene of the shooting and heard the remarks of the district judge and the matter discussed then and afterwards by the people. Gaines v. State (Tex. Cr. App.), 37 S. W. 331.