# COURT OF APPEALS,

## March 26, 1912.

## THE PEOPLE v. MICHAEL COSMO.

### (205 N. Y. 91.)

**(1.) MURDER—RIGHT OF TRIAL BY JURY.**

The right of trial by jury, both in England and here, is embedded in the Constitution; and with us it is a right which in criminal cases cannot be waived. But the method of securing that right, in respect of selecting men who are deemed qualified to act as jurors, is one of legislative cognizance which is subject to any change that does not trench upon the fundamental right.

**(2) SAME—QUALIFICATIONS OF JURY—PROPERTY QUALIFICATIONS.**

A verdict, either in a civil or criminal case, will not be set aside merely on the ground that one or more of the jurors had not the property qualification required by law. If the objection is not raised when the jury is drawn, the parties are concluded, although the fact may not have come to their knowledge until after the trial. This is the rule as to strictly legal and technical objections, not of objections which go to the character of the juror, and show that he labored under prejudices and prepossessions which rendered him incapable of acting impartially in the case, and that in all human probability there has not been a fair trial. Cases of the latter character might exist, in which it would be competent and proper for the court to set aside a verdict.

**(3.) SAME—OBJECTION MUST BE TAKEN AT TIME OF CALLING JURY.**

When a defendant has had a trial conducted according to the established forms of law, and his guilt has been certified, upon competent and sufficient evidence, by a jury of twelve in number who were capable of deciding his case fairly and impartially, he has had all that is guaranteed to him by the Constitution, and he should not be heard upon technical and purely statutory objections, which do not affect the merits of his case, and which he might have made, but failed to make, at the trial in the manner prescribed by law. (Cancemi v. People, 18 N. Y. 128, distinguished.)

**(4.) SAME.**

Upon the trial of defendant on an indictment for murder in the first degree of which he was found guilty upon evidence which amply

supports the verdict, one of the jurors, at the time the jury list from which he was drawn was made, owned no real estate and was not assessed for any personal property but was qualified as the husband of a woman who was the owner of a freehold estate of the value of $150 belonging to her in her own right. Before the trial the wife sold her real estate and at the time of the trial neither husband nor wife had any interest in real estate nor was the juror assessed for personal property. *Held*, that the Constitution does not prescribe the qualifications of jurors; that the qualifications of this juror were open to investigation when he was called; that the defendant's failure to interpose a challenge must be deemed a waiver of the objection which might have been taken. (Code Civ. Pro., § 1180.)

(5.) SAME.

Origin, development and extent of constitutional right to trial by jury, and the procedure with reference to the challenge to jurors considered and authorities collated.

APPEAL from a judgment of the Supreme Court, rendered May 24, 1911, at a Trial Term for the county of Orange, upon a verdict convicting the defendant of the crime of murder in the first degree.

The facts, so far as material, are stated in the opinion.

*William A. Parshall, H. B. Fullerton* and *Howard M. Starr,* for appellant. The jury which tried defendant was not legally constituted. There was, therefore, a mistrial. (Kelley v. People, 55 N. Y. 565; Armsby v. People, 2 T. & C. 157; People v. Dunn, 157 N. Y. 528; Hudson v. Caryl, 44 N. Y. 553; Sands v. Kimbark, 27 N. Y. 147; Cancemi v. People, 18 N. Y. 128; Wynehamer v. People, 13 N. Y. 378; People v. McKay, 18 Johns. 212; People v. Ransom, 7 Wend. 417; Shepherd v. People, 25 N. Y. 406.)

*Thomas C. Rogers,* District Attorney, and *Jonathan D. Wilson, Jr.,* for respondent. The jury which tried defendant was legally constituted. (Eggleston v. Smiley, 17 Johns. 133;

Hayes v. Thompson, 15 Abb. Pr. [N. S.] 220; Seacord v. Burling, 1 How. Pr. 175; Bennett v. Matthews, 40 How. Pr. 428; Stedman v. Batchelor, 49 Hun, 390; Dayharsh v. Enos, 5 N. Y. 531; People v. Jewett, 6 Wend. 389; People v. Rathbun, 21 Wend. 542; People v. Mack, 35 App. Div. 114; Stephens v. People, 19 N. Y. 549; Pierson v. People, 79 N. Y. 424.)

WERNER, J.:

The defendant has been found guilty of murder in the first degree upon evidence which amply supports the verdict, and his appeal to this court is based upon a record which presents but one question worthy of discussion. That question is, whether the trial court should have granted the defendant's motion to set aside the verdict on the ground that a juror, accepted without challenge by the prosecution and the defense, did not have the property qualifications required by the statute.

The defendant was indicted on the 12th day of December, 1910, by a grand jury of Orange county, and charged with the crime of murder in the first degree, in shooting and killing one Dominick Marone in the city of Middletown, in Orange county, on the 13th day of November, 1910. He was arraigned, pleaded not guilty, and was brought to trial on the 22d day of May, 1911. In the selection of a jury, fifty-eight of the summoned jurors were examined before the panel of twelve was completed. The sixth juror called was one Charles W. Barnes, who was accepted by both sides. The trial proceeded and the prosecution established, by abundant evidence, the shooting by the defendant, the death of his victim as the result, and the surrounding circumstances which clearly warranted the conclusion that the homicide was a deliberate and premeditated murder. The defendant pleaded self-defense and produced some evidence to support his plea. The case was submitted to the jury under a charge that was fair and free from substantial error, and the

jury returned a verdict of guilty of murder in the first degree. Counsel for the defendant challenges this verdict as unsupported by the evidence, but a careful review of the record has convinced us that the jury came to a just conclusion.

After the imposition of sentence, and on the 15th day of July, 1911, counsel for the defendant made a motion to set aside the verdict, as stated, on the ground that Barnes was incompetent to serve as a juror because he lacked the property qualifications which the statute requires a trial juror to have.

As to the facts bearing upon this question there is no dispute. It appears that on the 15th day of July, 1908, the proper functionaries of Orange county made and filed a list of jurors for the ensuing three years. At that time Charles Barnes was a resident of Goshen, in Orange county, and living with Ada Barnes, his wife, who was then the owner of real estate in that town of the value of at least two thousand dollars, for which she was assessed. The husband then owned no real estate, or any interest in any, and he was not assessed for any personal property. He was qualified, however, for he was the husband of a woman who was the owner of a freehold estate of the value of one hundred and fifty dollars belonging to her in her own right. (Judiciary Law, XVI, sec. 502.) In less than a year after the name of Barnes had thus been placed on the jury list, his property qualification was removed. On or about April 1, 1909, Mrs. Barnes sold her real estate and from that time forth neither husband nor wife appear to have any interest of any kind in real estate. Neither was he thereafter assessed for any personal property. This was the condition of affairs when, on the 8th day of May, 1911, a special panel of fifty jurors was drawn for the defendant's trial. Barnes was one of the fifty, and when he was summoned he informed the deputy sheriff who served him with the notice that he did not think he was qualified to serve as a juror because he was not the owner of property. The deputy sheriff very properly con-

cluded that the question was not for him to decide, and he
served his notice. At the opening of the trial Barnes appeared,
but said nothing of his lack of property qualifications. He
was the sixth man drawn and was accepted by both sides with-
out challenge. He sat through the trial, and participated in
the deliberations of the jury and in rendering the verdict.

· The sacredness and importance of the right to trial by jury
is attested by the arrangement, no less than by the language,
of our Constitution. The first great command of that charter
of our rights is that " No member of this State shall be dis-
franchised, or deprived of any of the rights or privileges secured
to any citizen thereof, unless by the law of the land, or the judg-
ment of his peers " (Art. 1, sec. 1), and the second is that
" The trial by jury in all cases in which it has been heretofore
used shall remain inviolate forever." (Art. 1, sec. 2.) And,
as if to lend solemnity and emphasis to this declaration in the
second section, it is further ordained that " a jury trial may
be waived by the parties in all civil cases in the manner to be
prescribed by law." (Art. 1 sec. 2.) The inevitable impli-
cation of this language is that the citizen is not only entitled
to the trial by jury in all cases in which it has been heretofore
used, but that in criminal cases in which it has been heretofore
used it cannot be waived by either party. The period referred
to in the expression " heretofore used," is the time which ante-
dates the adoption of the original Constitution when the com-
mon law was in force. (Duffy v. People, 6 Hill, 75.) It must
follow that if the right itself cannot be waived neither can
there be a waiver of anything that is essential to the full benefit
or protection which the right is designed to safeguard. (Can-
cemi v. People, 18 N. Y. 128, 136.)

From time immemorial a common-law jury has consisted of
twelve men. When or how that number acquired its historic
sacredness no one can tell, for the origin of the institution
itself has been lost in the darkness of antiquity. Much less

does history inform us with exactness as to the ancient qualifications required of these twelve. There seems to have been a time when they were witnesses who decided cases upon their personal knowledge of the matters in controversy. In the feudal days they were required to be freemen, and from this circumstance it may be surmised that some, if not all, were owners of property. With the development of civilization and the gradual establishment of property rights there came a period when the ownership of property was probably regarded as something of an index to the intelligence, character and standing of men in their communities, and as a convenient basis for the arbitrary fixing of a class from which the ultimate selection of jurors was to be made. In England this qualification seems to have been at first confined to such capital cases as treason, misprison of treason and murder (1 Hale's Pleas of the Crown, 283; Bishop's Criminal Procedure, vol. 1 [2d ed.], sec. 921); and we know that later it was extended by statute so that when the common law took root in American soil we engrafted upon the jury system the property qualification which to some extent, and in one form or another, has survived to this day. From this short and imperfect reference to the history of the subject we perceive that although the jury as an institution reaches backward beyond the memory or knowledge of man, it has had to be adapted to the ever-changing conditions brought about by the progress of the centuries. Through it all, only two things have remained fixed and immovable. The common-law jury must have twelve men, and these twelve, although taken from a class whose general qualifications may be arbitrarily fixed by law, are chosen by a selective process, which, although constantly changing in form, is always designed to secure the service of intelligent and impartial citizens who will be alike the conservators of the obligations of the state and the rights of the individual.

Thus we see that the right of trial by jury, both in England and here, is imbedded in the Constitution; and with us it is a right which in criminal cases cannot be waived. But the method of securing that right, in respect of selecting men who are deemed qualified to act as jurors, is one of legislative cognizance which is subject to any change that does not trench upon the fundamental right. (People v. Dunn, 157 N. Y. 528, 536; Stokes v. People, 53 N. Y. 164.)

None of the Constitutions of this state have ever prescribed the qualifications of jurors. From the earliest time there has been legislation upon the subject and it has been frequently changed. In 1699 the colonial legislature of New York passed an act prescribing that jurors should have in their own right a good house or messuage with ten acres of freehold, and in the cities of New York and Albany a dwelling house free from all incumbrances or a personal estate of the value of fifty pounds current money of the province. (Colonial Laws of N. Y., vol. 1, chap. 66, p. 387.) With various unimportant modifications in respect of property qualification this continued to be the law in the colony and State (L. 1788, chap. 41; L. 1808, chap. 98; R. L. of 1813, chap. 4) until the adoption of the Revised Statutes when, for the first time, jurors outside of the cities of New York, Albany and Hudson were put upon the same footing with jurors in those cities, and were qualified if assessed for $250 of personal property. Without pursing this statutory history in detail, it is enough to say that we have now a variety of statutes, which have been collated in the Judiciary Law, setting forth different standards of qualification for jury service and various methods of selection. The general statute, relating to all parts of the State not governed by special laws, prescribes that a person to be qualified as a trial juror in a court of record must be: " 1. A male citizen of the United States, and a resident of the county. 2. Not less than twenty-one nor more than seventy years of age. 3. Assessed, for per-

sonal property, belonging to him, in his own right, to the amount of two hundred and fifty dollars; or the owner of a freehold estate in real property, situated in the county, belonging to him in his own right, of the value of one hundred and fifty dollars; or the husband of a woman who is the owner of a like freehold estate, belonging to her, in her own right. * * * 4. In the possession of his natural faculties, and not infirm or decrepit. 5. Free from all legal exceptions of fair character; of approved integrity; of sound judgment; and well informed." (Cons. Laws, chap. 30, sec. 502.)

The argument of the learned counsel for the defendant proceeds upon the theory that these statutory requirements are mandatory; that in capital cases nothing can be waived; that a person called as a juror in such a case who has not every one of the prescribed qualifications is in fact not a juror; and that, therefore, the defendant has not had a trial by such a common-law jury as the Constitution guarantees. We shall endeavor to point out as briefly as possible what we regard as the fallacy of this argument.

The one thing guaranteed by the Constitution is the right of trial by jury in all cases in which it had been used before the adoption of either of our successive Constitutions. We have already called attention to the fact that this means a common-law jury of twelve drawn by some process in which the final right of selection is preserved to the citizen. This process of selection is necessarily a matter to be regulated by statute. The legislature, in the exercise of its undoubted power in the premises, has provided that in counties governed by the general law, as distinguished from special statutes of local application, there shall be made in every third year a list of the male citizens who have the statutory qualifications to serve as jurors in courts of record, and from these lists there shall be a drawing of jurors for the several terms of such courts. At the very inception of this proceeding a general list is to be made which is

to stand for three years or longer if no new list is made within that time. It goes without saying that some such regulation is a necessity, because it would be practically impossible to make a new list for each of the many terms of courts that are held in every year, and it is obvious that such a regulation must be supplemented by legislation to provide for such unforeseen contingencies as may arise during the time such a list is in existence. Some men die; others are shorn of their property qualifications; still others lose their natural faculties; many remove from the county in which they reside when the list was made, and a few are specifically disqualified for service in a particular case. To meet these contingencies the legislature has further provided that "An objection to the qualifications of juror is available only upon a challenge" (Code Civ. Pro., sec. 1180), and has enacted very definite provisions regulating this right of challenge. By still other statutes it is prescribed that this provision governing procedure in civil cases shall be applicable in all criminal cases triable in courts of record. (Code Civ. Proc., sec. 3347, subd. 7; Code Crim. Pro., sec. 362 et seq.) In both of these Codes it is further provided that, " The first twelve persons who appear, as their names are drawn and called, who are approved as indifferent between the parties, and are not discharged or excused, must be sworn; and constitute the jury to try the issue." (Code Civ. Pro., sec. 1166; Code Crim. Pro., sec. 387.) In criminal trials a challenge to the panel " must be taken before a juror is sworn, and must be in writing, specifying distinctly the facts constituting the ground of challenge" (Code Crim. Pro., sec. 363), and when the challenge is to an individual juror it "must be taken when the juror appears, and before he is sworn" (Code Crim. Pro., sec. 371), although in the latter case " the court may, in its discretion, for good cause, set aside a juror at any time before evidence is given in the action." (Ibid.) The rea-

11

son for these precise and definite rules of procedure are not far to seek. The jury system is a sacred institution, but it is also a very practical one. The individual has his rights, but so has the State. It would be no less intolerable than impracticable if, after every trial, there could be an investigation into matters affecting the qualifications of jurors which are readily ascertainable in advance. Such procedure would place a premium upon the neglect to ascertain whether a juror is qualified, for few men would challenge a juror if by their failure to do so they could gain a chance for a new trial in case of defeat. The public inconvenience is, moreover, a matter of far-reaching importance. If defeated parties were in all cases to be permitted to move for new trials on such grounds as that a juror has passed the age of seventy when he sits in a case, or has disposed of his property, or that he is lacking in any other of the several technical qualifications which do not affect his intelligence and fairness, no judgment would ever be safe from attack, and no trial could ever be confined to anything like well-defined or limited issues. It is not claimed that the juror Barnes was not fair or impartial, and for aught we know he may have been a much better juror than some others whose property qualifications are not questioned. The matter was one which was open to investigation when Barnes was called, and the defendant's failure to interpose a challenge must be deemed a waiver of the objection which might have been taken. "A known cause of challenge is always waived by withholding it, and raising it as an objection after verdict; since such a practice is incompatible with the good faith and dealing which should characterize the administration of justice. Therefore, in order to make an objection to a juror available after verdict, the objecting party must prove that it was unknown to him, and that it would not have been disclosed to him by a proper inquiry before the jury was sworn." (Thompson on Trials, sec. 114.)

The trend of authority in those states where the question has arisen is in the direction of holding that a new trial will not be granted as a matter of right for a cause of challenge not discovered until after verdict, whether the case be civil or criminal. (1 Thompson on Trials, sec. 116, and cases in the notes.) In Wisconsin the rule in criminal cases seems to be confined to those which are not capital (State v. Vogel, 22 Wis. 471), and in Michigan the doctrine of waiver has been held inapplicable in any criminal case. Hill v. People, 16 Mich. 351.) The Supreme Court of Illinois once held that objections to a juror could not be waived in a criminal case (Guykowski v. People, 2 Ill. 476), but later changed its views and decided that a motion for a new trial, made after a verdict in a capital case, should not be granted where an unchallenged juror, who had not the statutory property qualifications, was one of the twelve who rendered the verdict. Chase v. People, 40 Ill. 352.) This is also the position taken by the highest court of California in People v. Sanford (43 Cal. 29), and of Indiana in Croy v. State (32 Ind. 389), in which the question was identical with the one before us.

The precise question has not been decided in this State. The nearest approach to it is found in People v. Morrissey (1 Sheld. 295), a case of murder, where a juror was over the statutory age of sixty and no objection was made until the question was presented on a motion for a new trial. Upon appeal from the order denying the motion, the General Term of the Superior Court of Buffalo held that the objection was made too late. In People v. Mack (35 App. Div. 114) Mr. Justice Merwin, in the third department, wrote for a unanimous court in a case involving the charge of assault in the first degree. There it was held that a motion in arrest of judgment would not be granted upon the ground that the wife of one of the jurors was related, within the prohibited degrees, to the father of the complainant, when no challenge had been interposed and

it did not appear that the defendant had been prejudiced; and in People v. Thayer (132 App. Div. 593) the same court, in a case of robbery in the first degree, decided that an objection to the qualifications of a juror, on the ground that he was over seventy years of age, could not be successfully raised for the first time on a motion for a new trial after verdict, and that a failure to challenge the juror was a waiver of the objection. In the case of People v. Jewett (6 Wend. 386) the defendant, who was indicted for conspiracy, pleaded the disqualification of one of the grand jurors on the ground that he had not the property required by the statute. To this plea there was a demurrer, and upon the issue thus raised the matter came before Mr. Justice Sutherland of the Supreme Court. In a very interesting discussion, devoted principally to the question whether grand jurors were required to be freeholders, the learned justice held that an exception to a grand juror will not be heard or allowed after an indictment found. By way of illustration he argued: " I apprehend a verdict, either in a civil or criminal case, would not be set aside merely on the ground that one or more of the jurors had not the property qualification required by law. It very frequently occurs that such mistakes are made in the panel; and jurors undoubtedly sometimes serve without the requisite legal qualifications. But if the objection is not raised when the jury is drawn, the parties are concluded, although the fact may not have come to their knowledge until after the trial. I speak of strictly legal and technical objections, not of objections which go to the character of the juror, and show that he labored under prejudices and prepossessions which rendered him incapable of acting impartially in the case, and that in all human probability there has not been a fair trial. I have no doubt that cases of that description might exist, in which it would be competent and proper for the court to set aside a verdict; but they must be characterized by very strong and peculiar circumstances." (P. 389.)

[Although this dictum was obiter, we quote it as an accurate expression of a sound rule, which may without injustice be applied in all criminal cases, including those of capital degree. In the case at bar, as we have already shown, the personal qualifications of the juror Barnes are not questioned, and it does not appear that the defendant was in anywise prejudiced by the juror's lack of property qualification. All the pertinent facts existed when the juror was called, and a few questions would have elicited the truth. Although the case involves the solemn issue of life and death, we think it would be trifling with the administration of justice to hold that the defendant is entitled to a new trial in these circumstances. He has had a trial conducted according to the established forms of law, and his guilt has been certified, upon competent and sufficient evidence, by a jury of twelve in number who were capable of deciding his case fairly and impartially. That is all that was guaranteed to him by the Constitution (People v. Dunn; Stokes v. People, supra), and he should not now be heard upon technical and purely statutory objections, which do not affect the merits of his case, and which he might have made, but failed to make, at the trial in the manner prescribed by law.

The cases relied upon by the defendant are not in point. His principal authority (Cancemi v. People, supra) presents a condition radically different from that before us. There the defendant, on trial for murder, consented to the withdrawal of a juror and to the continuance of the trial with the remaining eleven. It was held that eleven men do not constitute such a jury as is guaranteed by the Constitution, and the defendant could not consent to being tried by eleven men any more than he could consent to be tried by two or three men, for neither of these numbers, nor any number less than twelve, would make a common-law jury. In Kelley v. People (55 N. Y. 565, 577) and Armsby v. People (2 T. & C. 157, 161), both criminal cases arising out of one theft, a juror was challenged because

he had not the statutory property qualifications. The challenge was sustained, and the ruling was affirmed on appeal. In the early case of People v. M'Kay (18 Johns. 213), where the defendant was convicted of murder, he moved in arrest of judgment on the ground that the venire to summon jurors was not under seal. This was held a sufficient warrant for a new trial, and the reason is obvious. The district attorney there admitted that in view of the clerk's failure to properly authenticate the venire, and the sheriff's neglect to make an official return thereto, it was as though there had been no venire whatever. That was a defect, moreover, which was not known to the defendant at the trial, and no examination of the jurors would have disclosed it. There are cases on the brief of defendant's counsel, such as People v. Ransom (7 Wend. 417); Pierson v. People (79 N. Y. 424, 429), and People v. Bradner (107 N. Y. 1), in all of which the regularity of the trials was sustained on appeal. They all contain some observations that are germane to the general subject of trial by jury, but they decide nothing that is helpful or authoritative in the case at bar.

The judgment of conviction should be affirmed.

CULLEN, Ch. J., GRAY, HAIGHT, VANN, HISCOCK and COLLIN, J., concur.

Judgment of conviction affirmed.