THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* ARTHUR L. KELHOFFER, Appellant.

County Court, Nassau County, July 27, 1943.

*George V. Fleckenstein* for appellant.

*Nathaniel L. Goldstein, Attorney-General (Phillip Huntington, Assistant District Attorney,* of counsel), for respondent.

COLLINS, J. The defendant was convicted of unlawful practice of medicine in violation of the Education Law, after trial in the Nassau County District Court sitting as a court of special sessions, by a District Court Judge and a jury, on December 18, 1942; sentence was imposed December 31, 1942.

From that judgment of conviction the defendant appeals and asserts, as a ground for reversal, that one of the jurors on the six-man jury which tried and convicted him was not properly summoned and impanelled according to law.

The supplemental return of the court below shows that one Max Jahn, who was juror No. 3 upon the jury which tried and convicted the defendant, was not a member of the original panel of jurors drawn for the December, 1942, Jury Term of the District Court; that on December 15, 1942, there being a shortage in the panel of jurors, the District Court Judge, pursuant to section 708 of the Code of Criminal Procedure, directed the Marshal to summon additional jurors for service forthwith, in accordance with which direction the Marshal summoned the said Max Jahn and three others, who acted as jurors in the court on that day; that, upon adjournment of court for that day, the District Court Judge requested all jurors to return the following day, and repeated such request at the close of court on December 16th and December 17th, so that the juror, Max Jahn, returned on those days and again on December 18th and was thus called and served as a juror upon the trial of the defendant on December 18, 1942.

The contention of the defendant is twofold: (1) that the court was without power to summon jurors as provided in section 708 of the Code of Criminal Procedure, and (2) assuming that the court had such power, the juror in question was called not only for the particular case for which he was required on December 15th, but was held over for December 16th, 17th and 18th and thus was drawn from the jurors present in court on the latter day to serve upon the trial of this defendant; and that, therefore, even if properly summoned for December 15, 1942, he was not properly summoned for December 18, 1942, and that, consequently, there was no valid jury and the defendant was in a similar position as he would have been had he been tried by a jury of five instead of six members. In other words, the defendant's contention is that the defect was not an irregularity but was jurisdictional.

The Nassau County District Court Act was enacted by chapter 274 of the Laws of 1939 and amended by chapter 719 of the Laws of 1939. The first article relates to the trial of civil

actions, setting forth the jurisdiction of the District Court in respect of such actions, the rules of procedure and the method of securing jury trials and of summoning and impanelling jurors. The latter provisions were contained in sections 153 and 154 of the Act which, as originally enacted, related only to civil actions.

Article II provided for the trial of certain criminal actions by the District Court sitting as a court of special sessions, prescribing its jurisdiction of such actions and providing, originally, in section 244 thereof, that jurors " shall " be drawn and summoned in the manner provided by the Code of Criminal Procedure for courts of special sessions in counties other than the counties of New York City and excepting the city of Albany.

By chapter 719 of the Laws of 1939, sections 153 and 154 of the District Court Act were amended, and the amendment of section 154 provided: " Notwithstanding any other provision of law, the following alternative method of selecting jurors for civil and criminal actions or proceedings, is hereby provided "; following which specific provisions for the summoning and impanelling of jurors were set forth. At the same time and by the same Act, section 244 of the District Court Act, concerning the drawing of jurors for courts of special sessions, was amended by substituting the word " may " for the word " shall ", thus making the method permissive rather than mandatory, and by adding the following sentence: " Jurors drawn pursuant to section one hundred fifty-three of this act may also be used in the trial of criminal cases "; and, also, at the same time and by chapter 721 of the Laws of 1939, section 703 of the Code of Criminal Procedure was amended by adding the following sentence: " In the county of Nassau, jurors may be drawn for service in the district court of such county as provided in the Nassau county district court act."

It seems quite clear, therefore, that these amendments resulted in making neither method exclusive by leaving it to the discretion of the District Court to proceed under the provisions of section 154 of that Act or under the provisions of section 244 thereof and the corresponding provisions of the Code of Criminal Procedure.

The provisions of the Code of Criminal Procedure referred to in section 244 of the District Court Act provide for a demand by a defendant for trial by jury (Code Crim. Pro. § 702), and further provide, in case of such a demand, how the jury shall be summoned (§§ 703, 704). A jury impanelled to try a defendant in special sessions shall consist of six (§ 706). Challenges

to the panel and to the individual jurors are the same as in the case of a trial for a misdemeanor (§ 707).

And, finally, if six jurors are not obtained, the court may direct an "officer to summon any of the bystanders, or others, who may be competent, and against whom there is no sufficient cause of challenge, to act as jurors" (§ 708). And, when six jurors appear and are accepted, they constitute the jury (§ 710).

In the instant case, therefore, there not being present sufficient jurors on December 15, 1942, the Presiding Judge had the right, under section 708 of the Code of Criminal Procedure, to summon bystanders, or others, who might be competent and against whom there was no sufficient cause of challenge to act as jurors. According to the supplemental return, he did so and four such jurors were summoned and returned. Apparently, the shortage continued and, instead of summoning the same or other qualified jurors on each of the succeeding three days, the court, at the close of the session on each day, directed the four jurors to return on the following day. This, in my opinion, was equivalent to a resummoning of such jurors on each of such days. If that be so, it would seem necessarily to follow that there was no irregularity in the summoning of the juror, Max Jahn, to serve on December 18, 1942, when the defendant was tried. Being properly in court on that day, therefore, the only possible irregularity which the defendant might claim was that, in impanelling the jury for his trial, the jurors originally drawn were not exhausted before the juror, Max Jahn, was called to the box. Whether this actually occurred does not appear, and, in support of the judgment, it may be presumed that the court followed the requirements of law in impanelling the jury.

Nevertheless, if it be assumed for the purpose of argument that the juror, Max Jahn, although properly summoned for December 15, 1942, was not properly summoned for December 18th, and was improperly placed upon the panel, the question still remains whether the defendant may be permitted to raise the point for the first time upon the appeal for the purpose of obtaining a new trial. He relies largely, in support of his contention, upon the case of *Cancemi* v. *The People* (18 N. Y. 128). There, however, the defendant consented to be tried by a jury of less than twelve, which created a situation quite different from that here presented. The court held that eleven men do not constitute the sort of jury guaranteed by the Constitution and that a defendant can no more consent to be tried by eleven men than by two or by three men, for neither of those numbers nor

any number less than twelve would constitute a common-law jury. In other words, the defendant in that case attempted to waive a right which was constitutional. What the Constitution secures to a defendant is the right of trial by an impartial jury as constituted at common law, and, when that right is secured, the defendant's constitutional protection is completely secured. The mode of procuring and of impanelling a jury is regulated by such laws as the Legislature may see fit to enact with respect to method of procedure, and it is within the power of the Legislature to make, from time to time, such changes in those laws as it may deem expedient so long as it is careful to preserve the right of trial by an impartial jury. When this has been done, if a defendant does not take advantage of the statutory provisions designed to protect his rights, he should have no cause for complaint in the absence of proof of injury. (*Stokes v. People,* 53 N. Y. 164, 173; *People v. Dunn,* 157 N. Y. 528; *People v. Meyer,* 162 N. Y. 357; *Akely v. Kinnicutt,* 208 App. Div. 487, affd. 238 N. Y. 466.)

Section 707 of the Code of Criminal Procedure provides that in courts of special sessions the same challenges may be taken to the panel or to the individual juror as on the trial of an indictment for a misdemeanor.

Challenges are of two kinds: (1) to the panel; (2) to the individual juror (Code Crim. Pro. § 359).

A challenge to the panel can be founded " only on a material departure, to the prejudice of the defendant, from the forms prescribed by the judiciary law, in respect to the drawing and return of the jury, or on the intentional omission of the sheriff to summon one or more of the jurors drawn " (Code Crim. Pro. § 362). The challenge to the panel is an objection made to all the trial jurors returned " and may be taken as well to the panel returned for the term, as to an additional panel ordered to complete the jury " (Code Crim. Pro. § 361). The challenge to the panel must be taken before a juror is sworn and must be in writing, specifying the facts constituting the ground of the challenge. (Code Crim. Pro. § 363.) Such a challenge may be demurred to or traversed and the facts tried. (Code Crim. Pro. §§ 364–368.)

Challenges to the individual juror are either peremptory or for cause, and such challenge must be taken when the juror appears and before he is sworn (Code Crim. Pro. §§ 370, 371). A peremptory challenge is one for which no reason need be given (Code Crim. Pro. § 372). A challenge for cause is either general, that the juror is disqualified from serving in any case, or

particular, that he is disqualified from serving in the case on trial (Code Crim. Pro. § 374). General causes of challenge are conviction for a felony, and a want of any of the qualifications prescribed to render a person a competent juror (Code Crim. Pro. § 375). Particular causes of challenge are for implied bias as defined in the Code of Criminal Procedure (§ 377), or actual bias as defined in the Code of Criminal Procedure (§ 378).

Most of the authorities which have arisen upon the question of challenge and of defendant's waiver of the right to raise the question by failure to challenge relate to challenges with respect to qualifications of the individual juror, that is, a general challenge to the individual juror for lack of statutory qualifications to act as such. A review of the cases is rendered unnecessary by the excellent and thorough discussion of the subject by the Court of Appeals in *People* v. *Cosmo* (205 N. Y. 91). The defendant, in that case, had been tried and convicted of murder in the first degree. Upon appeal, he raised the question that one of the jurors lacked the then necessary property qualifications to make him a competent juror. The court reviewed many of the earlier authorities. One of the earliest was *People* v. *Jewett* (6 Wend. 386), where a defendant pleaded that one of the members of the Grand Jury which indicted him had not the necessary property qualifications. On demurrer to that plea, the demurrer was sustained, the court holding that an exception to the qualifications of a grand juror will not be heard or allowed after an indictment is found, and further remarked that no verdict should be set aside merely because one or more of the jurors lacked the necessary property qualifications, and if the objection is not raised when the jury is drawn it may not be raised thereafter, although the fact may not have come to the knowledge of the party until after the trial. The Court of Appeals in the *Cosmo* case (*supra*) remarked that, although what the court said was *dictum,* it was, nevertheless, an accurate expression of the sound rule which might, without injustice, be applied in all criminal cases, including those of capital degree. The court then cited subsequent cases wherein the same conclusion had been reached, where a juror was over the statutory age (*People* v. *Morrissey,* 1 Sheld. 295; *People* v. *Thayer,* 61 Misc. 573, affd. 132 App. Div. 593); and even in a case where the wife of one of the jurors was related within the prohibited degree to the father of the complainant. (*People* v. *Mack,* 35 App. Div. 114.) The Court of Appeals, in the *Cosmo* case (*supra*), reiterated the principle above stated in the *Dunn*

case (157 N. Y. 528, *supra*) and *Stokes* case (53 N. Y. 164, *supra*), that, whereas the right of trial by jury in criminal cases is embodied in the Constitution and cannot be waived, yet the method of securing that right in respect of selecting men deemed qualified to act as jurors is one of legislative cognizance which is subject to change and does not entrench upon the fundamental right. Hence, the differentiation of the case of *Cancemi* v. *The People* (18 N. Y. 128, *supra*), where the constitutional right itself was involved and the court held that it could not be waived. Again, the court pointed out that the one thing which the Constitution guaranteed was the right of trial by jury, while the process of selection of juries was necessarily a matter to be regulated by statute, and, in view of the contingencies which might be unforeseen and yet might arise, statutory provision was made to the effect that an objection to the qualifications of a juror should be available only upon challenge, with definite provisions supplied by the Legislature as to the method of exercising the right of challenge. It would be not only impracticable but intolerable if, after a trial, there could be an investigation as to qualifications of jurors which were ascertainable in advance, and, quoting from Thompson on Trials (§ 114), a common cause of challenge is always waived by withholding it and in order to make such an objection to a juror available after verdict " the objecting party must prove that it was unknown to him, and that it would not have been disclosed to him by a proper inquiry before the jury was sworn ".

In the instant case, it may well be that the objection was unknown to the defendant, but it has not been proven by him that the objection would not have been disclosed had proper inquiry been made by him before the jury was sworn either by examination of the jurors themselves or by inquiry of the Clerk of the court or of the Presiding Judge with respect to the method by which the panel had been summoned. To be sure, the court, in the *Cosmo* case (*supra*), distinguished the early case of *People* v. *M'Kay* (18 Johns. 212), where a defendant convicted of murder moved in arrest of judgment on the ground that the venire to summon the jurors was not under seal. That case, however, is not a precedent controlling the instant case. There it was conceded that, under the common law and the existing statutes, the venire, being without seal, was void; the court said (p. 217): " * * * and in such a case, affecting life, we do not feel ourselves authorized to dispense with a process, required by the common law, and also by the statute, although we may not be able to perceive much use in continuing it.

\* \* \* It seems to be an admitted principle, that a challenge to the polls, is a waiver of a challenge to the array; but the objection now taken, is not to the array; a challenge to the array is an exception to the panel in which the jury are arrayed and set in order by the sheriff in his return; and it may be made on account of partiality, or of some default in the sheriff who arrayed the panel.''

Because the case was a capital one, the court apparently felt that it should give the defendant the benefit of the doubt although it expressed its inability to see much advantage in continuing the rule which it there applied; and further stated, clearly, that a challenge to the panel is waived by a challenge to the individual jurors. The court, in the *Cosmo* case (*supra*), pointed out that the defect involved in the *M'Kay* case (*supra*), the lack of seal on the venire, was a defect not only not known to the defendant at the trial but one which could not have been disclosed by any examination of the jurors. In the instant case, it might well have been disclosed by such examination; but, in any event, it would seem that the challenge which should have been made in the instant case was a challenge to the panel rather than to the individual juror, since section 361 of the Code of Criminal Procedure specifically defines a challenge to the panel as. an objection taken not only to the panel regularly returned for the term but, also, to an additional panel ordered to complete the jury. Exactly that situation was here presented by reason of the fact that the regularly drawn panel being insufficient, an additional panel was summoned thus giving the defendant, specifically, the right to challenge such additional panel upon the ground of a material departure, to his prejudice, from the legal requirements as to drawing and returning such panel. That such departure, if it existed, was unknown to the defendant, may be conceded; but it cannot be conceded that he could not have discovered it by inquiry of the ·jurors or of the court. Indeed, the provisions of the Code of Criminal Procedure, with respect to challenge of the panel, seem definitely to imply investigation by the defendant of the method of summoning the panel and drawing the jury therefrom in order to enable him to put his challenge in writing, specifying distinctly the grounds thereof. (Code Crim. Pro. § 363.)

That the result reached in the case of *People* v. *M'Kay* (*supra*) might not be the result reached were the same situation presented today is indicated not only in *People* v. *Cosmo* (*supra*), but, perhaps more plainly, in *People* v. *Ebelt* (180 N. Y. 470), also a capital case, where the court, in view of the

great public importance of questions concerning the validity of jurors impanelled to try civil and criminal cases, assuming that the Act there involved was violative of the Constitution, nevertheless held that, where the jurors drawn possessed substantially the same qualifications as those required by the Code of Criminal Procedure and were each separately examined by both parties and found satisfactory before being sworn, the defendant could not have been prejudiced in respect to the drawing and return of the jurors, and that no right guaranteed to him by the Constitution was thereby invaded. (Citing *People* v. *Petrea,* 92 N. Y. 128. See, also, to the same effect, *People* v. *Borgstrom,* 178 N. Y. 234.)

The Attorney-General, in his brief in support of the judgment of conviction, points out that other statutes than those above noted exist with reference to the selection of juries, and that the decisions and statements of text writers with respect to such statutes are in accord with the authorities and principles here stated.

Thus, section 234 of the Justice Court Act (L. 1920, ch. 937, as amd.) provides for the drawing of additional jurors in civil cases similar to that provided in section 708 of the Code of Criminal Procedure in criminal cases.

Furthermore, the reference in section 362 of the Code of Criminal Procedure to the " forms prescribed by the judiciary law ", in stating the grounds of challenge to the panel, leads to the provisions of the latter statute authorizing the drawing of additional talesmen, and providing that it shall be no objection to a jury so procured that it contains none of the jurors originally returned for the term, or is only partially composed of such jurors. (Judiciary Law, §§ 746, 749.)

Similar provisions are contained in the Federal Judicial Code (U. S. Code, tit. 28, §§ 411, 412, 417).

The Federal courts have held that, under such statutes, the court may summon additional jurors even in anticipation of a deficiency and, when so summoned, such additional jurors may continue to be called upon to act as jurors from day to day. (*St. Clair* v. *United States,* 154 U. S. 134; *United States* v. *Meyer,* 113 F. 2d 387; *Morgan* v. *Sun Oil Co.,* 109 F. 2d 178.) Indeed, the case last cited presented a situation quite similar to that in the instant case. Referring to the additional jurors theretofore summoned, the court said (p. 180): " The fact that they were already in the court room under prior order of the judge to report, does not affect the substantial legality of their use and service." And those same authorities sustain the principle of

waiver of irregularity by the defendant's failure to ascertain the facts about the panel before the trial and to raise objection by challenge.

The brief of the Attorney-General, supported by the text writers, shows that the summoning of talesmen from bystanders is an ancient practice, going back to early English law. Not only may additional jurors be so summoned when required, they may also be summoned in anticipation of a deficiency, will be presumed competent until the contrary is shown, and unless challenged before being sworn, objection will be deemed to be waived. (Thompson & Merriam on Juries, §§ 90, 91, 98, 100, 101; 31 Am. Jur., Jury, § 72.)

In the instant case, the use as a juror at the trial of the " additional " juror, Mr. Jahn, was proper under the authorities cited. Having been originally summoned to meet a deficiency, the court could properly call upon him, if necessary, from day to day, whether he were present in the court room or not. And, even if that were not so, the fact that he was called to serve upon the particular jury constituted, at the most, an irregularity which the defendant might waive, and which he did waive by failure to inquire as to the facts of the drawing and to interpose a challenge, and by examining and accepting the juror as satisfactory.

Judgment of conviction affirmed.