Lawrence H. Cooke, J.
Relator having been found to be a narcotic addict within the meaning of article 9 of the Mental Hygiene Law and having been certified to the care and custody of the New York State Narcotic Addiction Control Commission and now confined to the Woodbourne Rehabilitation Center, this habeas corpus proceeding has been instituted to secure his release based on stated grounds: (1) that the consent to detention by relator was not made voluntarily within the “ appreciation ” of Miranda v. Arizona; (2) that the physical facilities as they presently exist at Woodbourne are those of a correctional institution and not of a rehabilitation center; and (3) that relator is now rehabilitated.
Speaking generally, the writ of habeas corpus is a traditional means of inquiring into the legality of a person’s detention, it being a special proceeding used, where a person is actually imprisoned or otherwise restrained in his liberty at the time the writ is issued, to test the jurisdiction of the person or authority which presumes to restrain him (CPLR 7001; People ex rel. Wachowicz v. Martin, 293 N. Y. 361, 366; Matter of Morhous v. Supreme Ct. of State of N. Y., 293 N. Y. 131,135; People ex rel. Tweed v. Liscomb, 60 N. Y. 559; Wachtel, New York Practice Under the CPLR, pp. 346-347; 21 Carmody-Wait, New York Practice, pp. 67-68; 25 N. Y. Jur., Habeas Corpus, § 1).
I
Relator cites Miranda v. Arizona (384 U. S. 436) as establishing the principle that a person may not waive his right against self incrimination unless it was done knowingly and with full appreciation of the consequences thereof. The gist of said holding is found at page 444: ‘1 the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. ” In Hale v. Henkel (201 U. S. 43, *277 67) it was held: “ The interdiction of the Fifth Amendment operates only where a witness is asked to incriminate himself — in other words, to give testimony which may possibly expose him to a criminal charge. But if the criminality has already been taken away, the Amendment ceases to apply. ’ ’ These statements were quoted at length in Ullmann v United States (350 U. S. 422, 431 [1956]). In Murphy v. Waterfront Comm. (378 U. S. 52, 94 [1964]), Justice White, in concurring, stated: ‘ ‘ The privilege can be claimed in any proceeding, be it criminal or civil, administrative or judicial, investigatory or adjudicatory * * * and it protects any disclosures which the witness may reasonably apprehend could be used in a criminal prosecution or which could lead to other evidence that might be so used ” (emphasis supplied). In Matter of Gault (387 U. S. 1) it was held that the constitutional privilege against self incrimination is applicable in the case of juveniles charged with delinquency (p. 55). Here, there was no self incrimination because section 206-b of the Mental Hygiene Law conferred complete immunity in its statement that “ The certification of a narcotic addict * * * shall not forfeit or abridge any of the rights of any such narcotic addict as a citizen of the United States or of the State of New York * # * nor shall the facts or proceedings relating to the admission, certification or treatment of any such narcotic addict be used against him in any proceeding in any court, other than a proceeding pursuant to the provisions of this article ’ ’ (Matter of Spadafora, 54 Misc 2d 123, 128; cf. Ullmann v. United States, 350 U. S. 422, 434-435, supra; Matter of Grand Jury, County of Kings [Nicastro], 201 Misc. 4, affd. 279 App. Div. 915, affd. 303 N. Y. 983; People v. Nowacki, 180 Misc. 100).
In Miranda v. Arizona (supra, p. 444) custodial interrogation was defined as: “ questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. ’ ’ Here, there is no proof of questioning initiated by law enforcement officers. The proof demonstrates that the petition or application under paragraph a of subdivision 2 of section 206 of the Mental Hygiene Law was made by relator himself and, under said section, the medical examination was ordered by a Judge. (Cf. Sas v. State of Maryland, 334 F. 2d 506, 511.)
The proceeding resulting in relator’s confinement was not one involving criminal charges as in Miranda and Escobedo v. Illinois (378 U. S. 478); nor was it one charging juvenile delinquency as in Matter of Gault and Matter of Rust (53 Misc 2d 51). Narcotic addiction is an illness, not a crime, and the addict is a *278 sick person who may be confined for treatment or for the protection of society and concerning whom, in the interest of the general health or welfare of its inhabitants, a State might establish a program of compulsory treatment (Robinson v. California, 370 U. S. 660, 665, 667, 676; cf. Sporza v. German Sav. Bank, 192 N. Y. 8; People ex rel. Anonymous v. La Burt (14 A D 2d 660, mot. for lv. to app. den. 10 N Y 2d 708, cert. den. 369 U. S. 428). Nor is it a trifling or ordinary illness, for the human suffering and social economic loss caused by the disease of drug addiction are matters of grave concern to the people of the State, since crime, unemployment, poverty, loss of human dignity, loss of the ability to fill a meaningful and productive role in the community and damage to the physical and mental health of the addict himself are by-products of this spreading disease which is a threat to the peace and safety of the inhabitants of the State (Mental Hygiene Law, § 200).
Section 206 of the Mental Hygiene Law outlines an orderly procedure for the certification of a narcotic addict which is adapted to the nature of the proceeding and in which the individual has an opportunity to be heard and to defend, enforce and protect his rights, the privilege being afforded to a confined person to litigate fully the question of his drug addiction and the propriety of the proceedings leading to his confinement (Mental Hygiene Law, § 206, subd. 8; § 426); and the constitutional requirements of due process, therefore, are satisfied (Dohany v. Rogers, 281 U. S. 362, 369; Matter of Coates, 9 N Y 2d 242, 249, app. dsmd. sub. nom. Coates v. Walters, 368 U. S. 34; Matter of Lyons v. Goldstein, 290 N. Y. 19, 24-25; Stuart v. Palmer, 74 N. Y. 183, 191; Matter of Spadafora, 54 Misc 2d 123,128, supra; 9 N. Y. Jur., Constitutional Law, § 327). The statutes in question come within the permissible area pointed out by the United States Supreme Court in Robinson v. California (370 U. S. 660, 664-665, supra). It is assumed that all the steps required by the statute were regularly taken (Sporza v. German Sav. Bank, 192 N. Y. 8, 19, supra; Fisch, New York Evidence, § 1133). Here, the presumption of regularity was not overcome by the submission of any evidence of substance to the contrary.
II
Section 206-a of the Mental Hygiene Law provides, in part, that: *1 The commission may retain any narcotic addict certified to its care and custody in a rehabilitation center or other facility of the commission, or under any form of supervision it may deem appropriate, or may assign or transfer such nar *279 cotic addict to the facilities or supervision of any other department or agency of the state or of a person, association or corporation providing facilities or services approved by the commission * * * provided, further, that no narcotic addict certified to the care and custody of the commission pursuant to section two hundred six of this chapter shall be assigned or transferred to any correctional institution.” (See, also, Mental Hygiene Law, § 204, subd. 12.) The physical property now known as the Woodbourne Rehabilitation Center was formerly designated as the Woodbourne Correctional Institution (Correction Law, § 19). Pursuant to subdivision 4 of section 3 of the Public Lands Law, public records show that a portion of the Woodbourne facility was transferred to the jurisdiction of the Narcotic Addiction Control Commission on August 28, 1967 and the whole of said facility was substantially so transferred on October 4, 1967, concerning which judicial notice may be taken (Browne v. City of New York, 213 App. Div. 206, 233, affd. 241 N. Y. 96; Fisch, New York Evidence, p. 516, n. 24). The Woodbourne Rehabilitation Center, being operated solely under the professional jurisdiction and supervision of the Narcotic Addiction Control Commission as created pursuant to article 9 of the Mental Hygiene Law, is a Narcotic Addiction Control Commission facility (Mental Hygiene Law, § 29, subd. 12) and not a correctional institution, it being no longer operated under the jurisdiction of the Department of Correction (Correction Law, §§ 5, 6, 11, 19).
It is the policy of the State to help and treat narcotic addicts and, if possible, to cure them of the disease (Mental Hygiene Law, § 200) but this policy does not confer on the addict a right to release in the event of claimed inadequate treatment (People ex rel. Anonymous v. La Burt, 14 A D 2d 560, mot. for lv. to app. den. 10 N Y 2d 708, cert. den. 369 U. S. 428, supra). Section 204 of the Mental Hygiene Law confers broad powers on the commission, among them the establishment and operation of rehabilitation centers, the approval of facilities and services for the treatment, care or rehabilitation of narcotic addicts and the making of rules and regulations for the exercise of the powers and the performance of the duties of the commission. As related to the problem of narcotic addiction, the proof indicates that there has been some change and improvement in the services and personnel at Woodbourne in the very brief time which has elapsed since the change of jurisdiction and that considerably more can be expected in the future. (Cf. Matter of De La O, 59 Cal. 2d 128.)
*280 A mere disagreement as to the efficacy or advisability of the rules or discipline in force at the Woodbourne Rehabilitation Center does not confer on the addict a right to release (People ex rel. Anonymous v. La Burt, supra), the Narcotic Addiction Control Commission being directed to establish regulations and standards for the custody of narcotic addicts who have been certified to its care and custody pursuant to article 9 (Mental Hygiene Law, § 211, subd. 1; see, also, Mental Hygiene Law, § 204, subds. 11 and 14).
Ill
According to the proof, relator is a narcotic addict within the meaning of subdivision 2 of section 201 of the Mental Hygiene Law and should not be discharged at this time. (Cf. People v. Victor, 62 Cal. 2d 280, 297-305; Matter of De La O, 59 Cal. 2d 128, supra.) Relator’s medical history is convincing as to the need and advisability of a comprehensive and continued program of treatment.
The writ and the proceedings thereupon are dismissed and relator is remanded to the custody of the Director of the Woodbourne Rehabilitation Center.