R. Waldron Herzberg, J.
In this habeas corpus proceeding the record establishes that the petitioner was certified to the care and custody of the New York State Narcotic Addiction Control 'Commission (Commission) for treatment for drug addiction, pursuant to the provisions of section 206 of article 9 of the Mental Hygiene Law, and is now a resident at the Woodbourne Rehabilitation Center in Sullivan County.
On May 14, 1968 Henrietta Thompson, the mother of this 17-year-old youth, petitioned the Supreme Court, Queens County, to have her son certified as a drug addict. The court issued a warrant for Thompson’s arrest based upon the mother’s petition. The police, after arresting this youth, took him to the Edgecombe facility of the Commission in the Borough of Manhattan, City of New York. Although this young man had not committed any crime, he was detained in this State Institution against his will without an opportunity to contest his confinement for several days. During his commitment he was given a medical examination which established that he was a drug addict.
Thereafter on May 20, 1968, six days after his arrest, representatives of the Commission brought him before a Justice of the Supreme Court at Special Term, Part IV, held in Queens County. After the court had advised relator of his right to counsel, which Thompson did not take advantage of, the court certified him as a narcotic addict and directed his confinement in a facility of the Commission commencing on the date of the order and terminating upon either his discharge by the Commission as rehabilitated or not later than the expiration of 36 months from the granting of the order. Although the boy’s mother had initiated this proceeding, she did not appear in court at the time of his certification. Moreover the record does not state that the court determined as a fact that the relator s< waived counsel having knowledge of the significance of his act ” (see Mental Hygiene Law, § 206, subd. 4, par. a).
The relator in this habeas corpus proceeding contends that the writ should be sustained on two grounds: first, that a 17-year-old youth cannot legally waive his right to counsel, or, stated in another way, the court should have assigned counsel to represent him at this critical point in the proceedings; and second, that he is now rehabilitated.
The courts and Legislature of this State have always exercised scrupulous care in protecting the rights of infants, i.e., persons not yet 21 years of age. ‘ ‘ Too much care cannot be exercised by trial judges to see that infant wards of the courts are protected as far as possible ” (Honadle v. Stafford, 265 *934 N. Y. 354, 357). An infant always remains the ward of the court although the Judge cannot represent the child (see Matter of Gault, 387 U. S. 1, 36, infra). The Legislature in its wisdom neither permits a default judgment to be docketed against an infant unless he was represented in the action (CPLR 1203) nor allows an infant to settle his cause of action or claim against another without following the special procedure enacted for his benefit (see CPLR 1207, 1208). In the Surrogate’s Court “ An infant shall appear by the guardian of his property * * * unless the court appoints a guardian ad litem” otherwise the court does not obtain jurisdiction (SCPA 402). The Legislature, when it passed the Family Court Act in 1962, provided that a minor would have a right to the assistance of counsel of his own choosing or a Law Guardian in a neglect proceeding, in a proceeding to determine juvenile delinquency or in a proceeding to determine whether the minor was in need of supervision. ‘1 This declaration is based on a finding that counsel is often indispensable to a practical realization of due process of law and may be helpful in making reasoned determinations of fact and proper orders of disposition ” (Family Ct. Act, §§ 241, 242). The Court of Appeals in Matter of Gregory W. (19 N Y 2d 55, 62 [1966]) reaffirmed the longstanding policy of this State to protect infants whenever their personal freedom could be lost as the result of an adverse decision in a proceeding and said: “ While the Family Court Act specifically states that the proceedings held thereunder are not criminal in nature, the various provisions made for the protection of the rights of children who are charged with juvenile delinquency are indicative of a legislative recognition of the fact that such proceedings, resulting as they do in a loss of personal freedom, are at the very least quasi-criminal in nature. As the legislative committee report states: ‘ Any commitment — whether “ civil ” or “ criminal ”, whether assertedly for “ punitive ” or “ rehabilitative ” purposes — involves a grave interference with personal liberty.’ (Report of Joint Legislative Committee on Court Reorganization, Jan. 30, 1962, p. 8).”
In spite of meticulous care on the part of the Legislature in the past to insure effective representation, for infants when their rights were at stake, section 206 of the Mental Hygiene Law (admission of narcotic addict on court certification) fails to establish any guideline for the certification of narcotic addicts who are less than 21 years of age. The statute refers to a “ narcotic addict” without distinguishing between adults and infants. No provision requires the appointment of a Law *935 Guardian or guardian ad litem for those infants who come before the court unrepresented. Strangely enough, the infant who is compelled to appear before the Supreme Court on the petition of another person pursuant to the provisions of this section of the Mental Hygiene Law, with the prospect of confinement at Woodbourne, a facility of the Commission — his room a barred cell; his home a walled and guarded State institution — for a period of three years, is not given the protection afforded an infant in either a civil action or a probate proceeding or a juvenile delinquency matter.
The Court of Appeals recently in a landmark case held that the detention of an alleged drug addict, who was not charged with any crime, against his will at a facility of the Commission, without an opportunity to contest the basis of his deprivation of liberty, violated the provisions of the Fourteenth Amendment of the Constitution of the United States, which provides that no person shall be deprived of life, liberty or property without due process of law (Matter of James, 22 N Y 2d 545 [1968]).
The reasoning of Mr. Justice Fortas, speaking for a majority of the court, in Matter of Gault (387 U. S. 1 [1967]) applies to the factual situation with which we are now confronted. First, Mr. Justice Fortas described the commitment of a boy to a State institution (p. 27): “ A boy is charged with misconduct. The boy is committed to an institution where he may be restrained of liberty for years. It is of no constitutional consequence— and of limited practical meaning — that the institution to which he is committed is called an Industrial School. The fact of the matter is that, however euphemistic the title, a ‘ receiving home ’ or an 1 industrial school ’ for juveniles is an institution of confinement in which the child is incarcerated for a greater or lesser time. His world becomes ‘ a building with whitewashed walls, regimented routine and institutional hours ’. Instead of mother and father and sisters and brothers and friends and classmates, his world is peopled by guards, custodians, state employees and 1 delinquents ’ confined with him for anything from waywardness to rape and homicide.”
Then the Justice declared (p. 30) the necessity for effective assistance of counsel whenever there is a waiver by a youth: “ In Kent v. United States [383 U. S. 541, 554] we stated that the Juvenile Court Judge’s exercise of the power of the state as parens patriae was not unlimited. We said that1 the admonition to function in a “ parental ” relationship is not an invitation to procedural arbitrariness. ’ With respect to the waiver by the Juvenile Court to the adult court of jurisdiction over an offense committed by a youth, we said that ‘ there is no *936 place in our system of law for reaching a result of such tremendous consequences without ceremony — without hearing, without effective assistance of counsel, without a statement of reasons. ’ We announced with respect to such waiver proceedings that while ‘ we do not mean * * * to indicate that the hearing to be held must conform with all of the requirements of a criminal trial or even of the usual administrative hearing; but we do hold that the hearing must measure up to the essentials of due process and fair treatment.’ ” * * *
“ The juvenile needs the assistance of counsel to cope with problems of law, to make skilled inquiry into the facts, to insist upon regularity of the proceedings, and to ascertain whether he has a defense and to prepare and submit it. The child ‘ requires the guiding hand of counsel at every step in the proceedings against him.’ (Powell v. Alabama, 287 U. S. 45, 69.) Just as in Kent v. United States, supra [383 U. S. 541,] at 561-562, we indicated our agreement with the United States Court of Appeals for the District of Columbia Circuit that the assistance of counsel is essential for purposes of waiver proceedings, so we hold now that it is equally essential for the determination of delinquency, carrying with it the awesome prospect of incarceration in a state institution until the juvenile reaches the age of 21.” (pp. 36-37).
I find that the relator has established by a fair preponderance of the credible evidence that there was no valid waiver on his part of the right to be represented by an attorney at the time of his certification at .Special Term to the Commission as a narcotic addict. ‘ ‘ Regardless of the technical classification of the proceeding [wayward minor, Code Crim. Pro., § 913-a], and there is some ground for the assertion that it was criminal in nature [citing cases], the rights of the defendant minor were not adequately protected without the aid of counsel ” (People v. James, 9 N Y 2d 82, 87 [1961]). The provisions of the Fourteenth Amendment of the Constitution of the United States apply to infants as well as adults when section 206 of the Mental Hygiene Law is invoked. Due process of law is a prerequisite to the constitutional validity of these proceedings.
The failure of the court to assign counsel was critical. An effective legal representative could have demanded a hearing, objected to the introduction of the medical report based upon the medical examination of relator while he was illegally detained at Edgecombe, and thereby brought his client within the protection of Matter of James (supra). We must assume that the assigned attorney would have intelligently, diligently and *937 knowingly taken every possible step to protect the youth’s constitutional rights.
In respect to the second contention of relator, that he should be discharged since he is now rehabilitated, the testimony discloses that Thompson took heroin for seven months. He started with one bag a day; later Q mainlined ” two or three bags a day depending upon his finances; and stole from his family to satisfy his habit. According to the preponderance of credible evidence Edward Thompson is still a narcotic addict within the meaning of subdivision 2 of section 201 of the Mental Hygiene Law.
Although I find that the writ must be sustained and relator discharged (Mental Hygiene Law, § 206, subd. 7) for the reasons previously stated, I do so reluctantly for the reason that the Legislature has made no provision in the statute for the court to release a drug addict to aftercare supervision by the Commission. The writ is sustained and relator is released from custody.