R. Waldron Herzberg, J.
In these habeas corpus proceedings the records establish that the relators were certified to the care and custody of the New York State Narcotic Addiction Control Commission (Commission) for treatment for drug addiction pursuant to the provisions of section 206 of article 9 of the Mental Hygiene Law and are now residents at the Woodbourne Rehabilitation Center (Woodbourne) in Sullivan County. The records also establish that the relators at the time of certification were minors and did not have the benefit of assigned or retained counsel at their appearances before the court.
These infants will be confined at Woodbourne for a minimum period of nine months to one year. They will be subject to a regimented routine and institutional hours. Instead of parents and brothers and sisters and friends, their world will be peopled by guards, cústodians, felons and delinquents incarcerated with them in cells or locked dormitories behind brick walls and barred windows. Even after release to aftercare their freedom will be limited by dictation of the Commission’s representatives. At the whim of a supervisor they can be returned to confinement at Woodbourne. For a period of 36 months they will he deprived of their liberty and right to freedom of action.
The attorneys for the relators contend that these minors did not effectively waive their rights before the court at the time of certification or stated in another way the court should have assigned counsel to represent them at this critical point in the proceedings.
The courts and Legislature of this State have always exercised scrupulous care in protecting the rights of infants in judicial proceedings. “ Too much care cannot be exercised by trial judges to see that infant wards of the courts are protected as far as possible ” (Honadle v. Stafford, 265 N. Y. 354, 357). *191 An infant always remains the ward of the court although the Judge cannot represent him (Matter of Gault, 387 U. S. 1, 36, infra). The Legislature in its wisdom neither permits a default judgment to he docketed against an infant unless he was represented in the action (CPLR 1203) nor allows an infant to settle his cause of action or claim against another without adhering to the special procedure enacted for his benefit (CPLR 1207, 1208). In the Surrogate’s Court “An infant shall appear by the guardian of his property * * * unless the court appoints a guardian ad litem ” otherwise the court does not obtain jurisdiction (SCPA 402). The Legislature, when it enacted the Family Court Act in 1962, provided that a minor would have a right to the assistance of counsel of his own choosing or a Law Guardian in a neglect proceeding or in a proceeding to determine juvenile delinquency or in a proceeding to determine whether the minor was in need of supervision. “This declaration is based on a.finding that counsel is often indispensable to a practical realization of due process of law and may be helpful in making reasoned determinations of fact and proper orders of disposition” (Family Ct. Act., §§ 241, 242). The highest court of this State in Matter of Gregory W. (19 N Y 2d 55, 62) reaffirmed recently the long standing policy of this State to protect infants whenever their personal freedom might be lost as the result of an adverse decision in a proceeding stating: ‘ ‘ While the Family Court Act specifically states that the proceedings held thereunder are not criminal in nature, the various provisions made for the protection of the rights of children who are charged with juvenile delinquency are indicative of a legislative recognition of the fact that such proceedings, resulting as they do in a loss of personal freedom, are at the very least quasi-criminal in nature. As the legislative committee report states: ‘ Any commitment — whether “civil” or “criminal”, whether assertedly for “punitive” or “rehabilitative” purposes- — ■ involves a grave interference with personal liberty ’. (Report of Joint Legislative Committee on Court Reorganization, Jan. 30, 1962, p. 8.) ” No logical or legal argument has been advanced by respondent why these relators should not likewise have had the benefit of legal representation in these quasi-criminal proceedings.
The landmark decision of the Supreme Court in Matter of Gault (387 U. S. 1 [1967]) points the way to the decision in this matter. The Justice writing for the majority of the court at page 30 declared the necessity for effective assistance of *192 counsel whenever there is to be a waiver of a right by an infant: “ In Kent v. United States [383 U. S. 541, 554], we stated that the Juvenile Court Judge’s exercise of the power of the state as parens patriae was not unlimited. We said that1 the admonition .to function in a “ parental ’ ’ relationship is not an invitation to procedural arbitrariness.’ With respect to the waiver by the Juvenile Court to the adult court of jurisdiction over an offense committed by a youth, we said that ‘ there is no place in our system of law for reaching a result of such tremendous consequences without ceremony — without hearing, without effective assistance of counsel, without a statement of reasons.’ We announced with respect to such waiver proceedings that while ‘ We do not mean * * * to indicate that the hearing to be held must conform with all of the requirements of a criminal trial or even of the usual administrative hearing; but we do hold that the hearing must measure up to the essentials of due process and fair treatment.’ ”
“ The juvenile needs the assistance of counsel to cope with problems of law, to make skilled inquiry into the facts, to insist upon regularity of the proceedings, and to ascertain whether he has a defense and to prepare and submit it. The child ‘ requires the guiding hand of counsel at every step in the proceedings against him.’ [Powell v. Alabama, 287 U. S. 45, 69.] Just as in Kent v. United States [383 U. S. 541,] supra at 561-562 we indicated our agreement with the United States Court of Appeals for the District of Columbia Circuit that the assistance of counsel is essential for purposes of waiver proceedings, so we hold now that it is equally essential for the determination of delinquency, carrying with it the awesome prospect of incarceration in a state institution until the juvenile reaches the age of 21.” (pp. 36-37).
The holding in People v. Stephen J. B. (23 N Y 2d 611) relied on by respondent is not inapposite to that in Matter of Gault (supra). In Stephen J. B. the question presented was “ Does a statement made by a defendant [a 16-year-old boy] to the police before he has been adequately warned of his constitutional rights render inadmissible' a later statement made to a police officer after complete warnings have been given? ” The Court of Appeals held in the negative and pointed out in a footnote at page 617 that its decision was not affected by Matter of Gault since the Supreme Court of the United States expressly stated that ‘ ‘ We are not here concerned with the procedures or constitutional rights applicable to the prejudicial stages of the juvenile process ” (Id. p. 13).
*193 I find that the provisions of the Fourteenth Amendment of the Constitution of the United States apply to infants as well as adults when civil certification of an alleged narcotic addict pursuant to section 206 of the Mental Hygiene Law is invoked. Due process of law is a prerequisite to the constitutional validity of these proceedings. The rights of these infants were not adequately protected without the aid of counsel (see People v. James, 9 N Y 2d 82, 87 [1961]). Therefore they did not effectively waive their rights to a hearing or to be represented by counsel before the court (see Matter of Thompson, 57 Misc 2d 932).
Furthermore, even assuming that these infants could have effectively waived their rights without representation by counsel, I find from the evidence that they did not make knowledgeable waivers. The relators were incapacitated persons at the time of their certification. They were incapable by reason of their use of narcotics of adequately protecting their rights (see SCPA § 103, subd. 24). The testimony discloses that several of these infants were under the influence of heroin at the time of their court appearances. Moreover in none of these certification proceedings did the court make the determination required by statute that the alleged narcotic addict waived the right to be represented by counsel having knowledge of the significance of his act (Mental Hygiene Law, § 206, subd. 2, par. d and subd. 4, par. a). No answers were elicited from the alleged narcotic addicts which would establish either their mental capacity or ability to waive their rights in a knowledgeable manner. In fact the proceedings were summary in nature; the infants never were afforded a reasonable time to study and evaluate the medical reports or consult with anyone capable of advising them as to their contents.
The testimony of residents and their relatives at hearings held at Woodbourne convinces me that a rehabilitation program for drug addicts should be given top priority in this State. Evidence that heroin can be purchased in certain ghetto areas of New York City with less difficulty than a package of cigarettes emphasizes the need for solving the drug problem without delay. However, I have noted that many youths from these neighborhoods, who entered the present program with eagerness and hope, now are disillusioned and bitter and have lost all interest in rehabilitation at Woodbourne. They claim they were induced to consent to certification upon representations that they would be hospitalized at Woodbourne with therapeutic programs available including swimming. Then, to their dismay, immediately after certification, officers of the Commission placed *194 handcuffs on them for the trip to Edgecomb. They consider they have been treated by the Commission as convicted felons. Later, after their arrival at Woodbourne, they learned that the promised therapeutic treatment not only was nonexistent but. that the rehabilitation program consisted of institutional confinement for many months in a former correctional facility of the State. The present lack of enthusiasm for the program on the part of many of its participants presages disappointing results in the future unless present procedures are modified.
On the basis of testimony taken in 200 or more habeas corpus proceedings at Woodbourne, I believe that this is an appropriate time to make several recommendations:
(1) Every alleged narcotic addict should be represented either by his own or assigned counsel at every stage of the proceedings leading to his certification to the care and custody of the Commission;
(2) The alleged narcotic addict and his attorney should be afforded a reasonable time to inspect and evaluate the medical report submitted by the Commission’s doctor;
(3) Before certifying the narcotic addict to the care and custody of the Commission the court should make certain that the respondent was not then under the influence of a narcotic drug and knew the significance of his acts;
(4) The alleged narcotic addict should be truthfully informed of the nature of the rehabilitation program, i.e. that Woodbourne is not a hospital or recreational center but an institution where he will be confined for a period of at least nine months under a regimented routine;
(5) The petition, medical report, order of certification and transcripts of all proceedings leading to certification should accompany the narcotic addict at all times; and
(6) The practice of handcuffing youthful drug addicts immediately after certification, except under exceptional circumstances, should be abandoned.
Acceptance and compliance with these suggestions, in my opinion, will not only improve the judicial processing of pending and future habeas corpus proceedings initiated by residents of rehabilitation centers but also will reduce significantly their cost to the taxpayers of this State.
For the reasons hereinbefore set forth, the writs are sustained.