Nathaniel T. Helman, J.
In this narcotic addiction proceeding, it appears that the alleged addict displayed symptoms of mental disability which prompted the trial court to direct an inquiry before another Judge concerning the ability of the alleged addict to understand the nature of the proceedings and his competency to participate in the trial. Such remand in conformity with the court’s practice under Huntley (15 N Y 2d 72) was approved procedurally in People v. Hudson (19 N Y 2d 137). Questions are now raised as to the power of the court, in a pretrial proceeding, to determine issues of incompetency in an addiction case.
Ample authority exists in a criminal case to suspend further hearing until the issue of competence to stand trial is determined. Sections 658 to 662-a of the Code of Criminal Procedure establish methods and procedures to be employed after indictment; sections 870 to 873 apply similarly to proceedings before indictment or in case of mere offense. The Mental Hygiene Law, however, particularly the more recent sections of article 9 relating to narcotic addicts, offers no method of determining, as to an alleged addict, ‘ ‘ whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding” (Dusky v. United States, 362 U. S. 402).
It is well established that commitment pursuant to section 206 of the Mental Hygiene Law is a “civil” commitment; evidentiary rules concerned with burdens of proof and the introduction of evidence are governed by “ civil ” procedures. Where a plenary inquiry is conducted into respondent’s competency to stand trial, the view has often been expressed that even in a criminal trial, that issue is ancillary to the trial of the criminal charge, and is merely a civil proceeding (Matter of Carroll v. Knickerbocker Ice Co., 218 N. Y. 435; Matter of Bresee, 82 Iowa 573). Thus, it would appear that inquiries of this type, whether under the Criminal Code or the Mental Hygiene Law, partake of a similar character, and should be identical, notwithstanding statutory provisions that the Mental Hygiene Law is not applicable to persons confined under criminal charges.
It may be noted that, since the 1966 amendments, several decisions have emphasized the broad areas of due process which *580 are afforded the respondent in an addiction case; the right to counsel at every stage, and the opportunity to litigate fully the issue of addiction (Matter of James, 22 N Y 2d 545; People ex rel. Gordon v. Murphy, 55 Misc 2d 275). In the James case, the court held (p. 552) that a three-day detention of appellant: ‘ ‘ without notice of the nature- of the proceeding and an opportunity to contest the finding upon which the determination to restrain his liberty was predicated, is contrary to our most fundamental notions of fairness and constitutes a deprivation of liberty without due process. ’ ’ (Emphasis added.) Certainly, the type of safeguards established by that case would be meaningless if a person mentally deranged were required to participate in a proceeding where restraints on his liberty might be imposed.
Distinctions between “criminal” and “civil” have fallen in several recent cases where similar questions were involved. The landmark case of Matter of Gault (387 U. S. 1), held that juvenile delinquency proceedings, nominally 11 civil ’ ’, were sufficiently similar to criminal proceedings to require that accused delinquents be afforded counsel, right of confrontation, and all other constitutional rights available to those criminally charged. (See, also, Matter of Thompson v. Morrow, 57 Misc 2d 932.) In Matter of Gregory W. (19 N Y 2d 55, 62), the court was concerned with the rights of an infant under the Family Court Act. Recognizing that the proceedings were not criminal in nature, the court nevertheless sustained them, “ resulting as they do in a loss of freedom, are at the very least, quasi-criminal in nature ”. The Report of the Joint Legislative Committee on Court Reorganization of January 30, 1962, page 8, contains the following: “ Any commitment — whether ‘civil’ or ‘ criminal ’, whether assertedly for ‘ punitive ’ or ‘ rehabilitative ’ purposes — involves a grave interference with personal liberty ’ ’.
Subdivision 2 of section 208 of the Mental Hygiene Law specifically provides that notwithstanding the “civil” nature of the proceeding, a right of confrontation exists as at a criminal trial. Paragraph a of subdivision 4 of section 208, fixes the maximum confinement period for treatment and rehabilitation at 60 months for felonies and 36 months for misdemeanors. And in its declaration of the purpose of the new law the statute makes frequent reference to the danger to the safety of New York citizens from narcotic addiction and the need of the law to protect society from extended crime. Thus, from every standpoint, no just reason appears why a person suffering from narcotic addiction, who is unable to participate in the proceed *581 ing because of mental incompetency, should be denied a separate hearing on that question, merely because he does not face a criminal charge.
Many of the older cases speak of the inherent power of the court, in the absence of statute, to investigate the question of the present sanity of the accused (Freeman v. People, 4 Denio 9; People v. Rhinelander, 2 N. Y. Crim. Rep. 335). “The rationale of the New York decisions is this: At common law in England the trial of the issue of present insanity was in the sound discretion of the court; whether or not there existed a statute declaring that insane persons were not to be tried, it was the inherent right of the court to suspend a trial if a man appeared insane; and it was also the inherent right of the court to try the issue as it saw fit, so long as the decision therein was judicial in nature.” (Insanity in Criminal Cases, 26 Cornell L. Q., pp. 393-394.)
The Legislature having established procedures for inquiry into the issue of incompetency to stand trial in criminal cases, it is reasonable to suggest that the same procedures be adopted in civil cases.
There remains the question of whether a jury trial is required of the issue of incompetency. Although many early cases indicate that no jury trial is required, People v. Rhinelander (2 N. Y. Crim. 335, 340) is explicit on this point: “ Nor do I find any provision which either takes from or in any way limits the power which has heretofore been exercised * * * to inquire into such matters, by and with the aid of a jury, or in such other way as may be found to be discreet and convenient.” (Italics added.) Essentially, the issue is not whether defendant was incompetent at the time of the commission of an offense, but whether he is competent to stand trial. Justice Froessel, in People ex rel. Klesitz v. Mills (179 Misc. 58, 64) said: “ it is my opinion that a trial by jury of the incidental issue of present insanity * * * is not a constitutional right. ”
The overwhelming weight of authority accepts and follows this rationale, sustaining the view that a trial by jury of the subsidiary issue of present insanity is not constitutionally required. While no recent cases have been found in New York which have so directly held, there are ample dicta rife in many of the older cases which state that no jury is constitutionally necessary in these proceedings (People v. McElvaine, 125 N. Y. 596; People v. Tobin, 176 N. Y. 278). Nor do the provisions of section 100 (Mental Hygiene Law) which speak of a jury trial of issues of incompetency where a committee of the person or property is to be appointed, alter this trend, for there the con *582 cern is only with the ability of the alleged incompetent to ‘1 manage his affairs ’ ’ and to ‘ ‘ preserve his property from waste.”
It is on the basis of the views herein expressed, that this court has conducted a nonjury hearing on the issue of the competency of the alleged addict to stand trial. With the consent of the attorneys for the respective parties, the court appointed an impartial psychiatrist to examine the respondent and to report to the court. The overwhelming weight of the medical testimony, corroborated in many aspects by the testimony of respondent’s mother as to her own observations, was to the effect that respondent is suffering from a psychotic illness, diagnosed as schizophrenic reaction. I find him incompetent to confer with counsel, to understand the nature of the proceeding against him, or to participate in rehabilitative treatment for narcotic addiction.
An order may be submitted in accordance with the foregoing, providing for psychiatric hospitalization in a closed, protective setting.