THE PEOPLE OF THE STATE OF NEW YORK ex rel. FRANK W. OSTWALD, Relator, against PHILETE F. CRAVER, as Sheriff of Rensselaer County, Defendant.

Supreme Court, Special Term, Rensselaer County, November 14, 1946.

*Thomas M. Monahan, Jr.,* and *Joseph F. Purcell* for relator.

*Earle J. Wiley, District Attorney,* defendant.

MURRAY, J. Relator, Frank W. Ostwald, after indictment by a Rensselaer County Grand Jury was placed on trial and convicted by a jury in Rensselaer County Court on October 4, 1945, of the crime of culpable negligence, violation of section 1053-a of the Penal Law. He was sentenced to serve a term of imprisonment in Clinton Prison, the minimum of which was one year and the maximum five years with recommendation of parole at the earliest possible time.

Ostwald was delivered to the Warden of Clinton Prison October 10, 1946, and commenced service of sentence. He was released from prison October 13, 1946, and surrendered to the custody of the Sheriff of Rensselaer County, and thereafter, on October 21, 1946, pursuant to an order to show cause dated and signed October 17, 1946, by Hon. HERBERT D. HAMM, County Judge of Rensselaer County, brought before the court. The legal process, if any, authorizing the return of relator from Clinton Prison on October 13, 1946, to the custody of the Sheriff of Rensselaer County does not appear in the record of the proceedings had herein. Upon return of the order to show cause and on motion of the District Attorney, the County Judge made the following order: "Ordered, that the verdict of guilty in the above entitled matter returned by a jury on the 4th day of October, 1946 be and the same is hereby vacated and set aside and the Judgment of this court committing the defendant to Clinton Prison, Dannemora, New York, for an indeterminate term of one year minimum and five years maximum is vacated and a new trial ordered."

The court clerk's minutes of the proceedings had before the County Judge are as follows:

"At a term of the County Court of County of Rensselaer held in and for the County of Rensselaer at the Court House Annex in the City of Troy, County of Rensselaer, State of New York on the 21st day of October 1946.

Proclamation made and Court opened.
Present: Hon. HERBERT D. HAMM, County Judge

| THE PEOPLE OF THE STATE OF NEW YORK | |
|---|---|
| against | Violation Section |
| FRANK W. OSTWALD | 1053 a Penal Law |

Same appearances as before
Defendant Present
Court heard return of an order to show cause
Judgment of conviction set aside and a new trial granted
Proclamation made and court adjourned to the chambers of the Presiding Judge."

The legality of such procedure is challenged by relator. He maintains he has once been placed in jeopardy and may not again be tried for the same offense pursuant to the order as made herein. No questions of fact are involved. Whether or not Ostwald is guilty or not guilty is not in issue. The subject for judicial consideration is whether relator's constitutional rights have been violated or are in danger of infringement by reason of the order directing that he be tried again for the same offense. He seeks relief by habeas corpus. Such application in his behalf is proper. (*People ex rel. Brinkman* v. *Barr,* 248 N. Y. 126; *People ex rel. Meyer* v. *Warden,* 269 N. Y. 426.) The only appeal allowed a defendant in a criminal case is from a judgment of conviction after indictment. (*People ex rel. Stabile* v. *Warden,* 202 N. Y. 138, 152; Code Crim. Pro., § 517.)

Every person who is unlawfully restrained of his or her liberty has an absolute right to test the legality of unlawful detention by invoking the ancient remedy of habeas corpus. Resort to it is embedded both in the Federal and State Constitutions. (U. S. Const., art. I, § 9; N. Y. Const., art. I, § 4.) Prompt relief and action by means of habeas corpus is attested further by the mandate of the Legislature of the State of New York (Civ. Prac. Act, art. 77, § 1235), that a court or judge authorized to grant a writ of habeas corpus must do so without delay, and if refused forfeits to the prisoner $1,000.

The validity of the order is attacked by relator on two grounds. He asserts first the verdict of the jury and judgment of conviction were valid; and second, the order setting aside the verdict of the jury and judgment of conviction and granting a new trial was erroneous and improper. Paradoxical though it be, although relator has been granted a new trial, he insists nonetheless he is now unlawfully restrained of his liberty by the Sheriff of Rensselaer County in violation of the Fifth Amendment of the Constitution of the United States and section 6 of article I of the Constitution of the State of New York, that no person shall be subject to be twice put in jeopardy for the same offense.

To determine such issue of law, it is essential, basic and necessary to decide whether or not relator has already once been tried for the identical offense for which a new trial has been directed. Established legal precedents, both Federal and State, the Code of Criminal Procedure, the Judiciary Law, logic and reason dictate and compel the conclusion he has been put in jeojardy for the same offense by a previous trial. The Rensselaer County Court had plenary jurisdiction both as to the nature of the offense and the person of relator. Relator was tried and convicted by a jury in such court. It is proposed to place him once more on trial on the same indictment for the same offense on which he has been previously convicted. The result of his first trial may not be rendered nugatory, nullified or annulled on motion of the District Attorney for the reason as urged by him that one of the jurors who served was an alien, since it is undisputed the right of such juror to act was not challenged. Review of the numerous legal decisions and law applicable settles such fact beyond peradventure of a doubt.

The order of the County Judge is predicated on an affidavit of the District Attorney wherein he stated: " That on October 16, 1946, he was informed that one of the members of the jury who rendered the verdict — Marie Lacayo — was not a citizen of the United States; that thereupon deponent on the same day visited Marie Lacayo at her home, 28 Belle Avenue, in the City of Troy, New York and learned from her she was not a citizen of the United States but was a native and citizen of the Country of Nicaragua.''

Neither the District Attorney nor counsel for relator knew such juror was thus disqualified. The record discloses that no challenge or other objection was interposed as to qualification or service of Marie Lacayo to act as a juror. Section 450 of the Civil Practice Act declares: " An objection to the qualifications of a juror  *  *  *  or a challenge to the panel or array of

jurors, must be tried and determined by the court only." Such rule of practice applies equally as well in a criminal action as in a civil action. Failure to challenge where the objection is to the proper qualifications of a juror is deemed a waiver of such objection. (*People* v. *Cosmo*, 205 N. Y. 91.)

The case of *People* v. *Thayer* (132 App. Div. 593), third judicial department, contains a comprehensive review of judicial decisions on the questions of qualifications of jurors and waiver of objections by failure to challenge on trial any juror ineligible to serve. There the court stated (pp. 594–595): " It was early settled that a failure to object to the qualifications of a juror was a waiver of all objections, although the disqualification was not known to the defeated party at the time of the trial. (*Eggleston* v. *Smiley*, 17 Johns. 133; *Hayes* v. *Thompson*, 15 Abb. Pr. [N. S.] 220; *Seacord* v. *Burling*, 1 How Pr. 175; *Bennett* v. *Matthews*, 40 id. 428; *Stedman* v. *Batchelor*, 49 Hun, 390; *Dayharsh* v. *Enos*, 5 N. Y. 531.) The following cases sustain the claim that this rule has been generally observed in criminal cases: *People* v. *Jewett* (6 Wend. 389); *People* v. *Rathbun* (21 id. 542); *People* v. *Mack* (35 App. Div. 114); *Stephens* v. *People* (19 N. Y. 549); *Pierson* v. *People* (79 id. 424). In *People* v. *Mack*, Mr. Justice MERWIN said: ' In many criminal cases it has been held to be immaterial whether or not the defendant, in cases not capital, knew before the verdict the disqualification of the juror, as long as he had an opportunity to challenge and question the juror as to his qualifications, but neglected to do so,' and cited *State* v. *Vogel* (22 Wis. 471); *King* v. *Sutton* (8 B. & C. 417); *State* v. *Quarrel* (2 Bay [S. C.] 150; *Williams* v. *State* (37 Miss. 407). But aside from these considerations the law was settled by an amendment to section 1180, of the Code of Civil Procedure (Laws of 1877, chap. 416). The section as amended provides that, ' An objection to the qualifications of a juror is available only upon a challenge,' and this provision is made to ' apply equally to a criminal and a civil action or special proceeding, and to a court of criminal and a court of civil jurisdiction ' by subdivision 7 of section 3347 of the Code of Civil Procedure."

In *People* v. *Cosmo* (205 N. Y. 91, *supra*) the Court of Appeals of the State of New York said (pp. 100–101): " The jury system is a sacred institution, but it is also a very practical one. The individual has his rights, but so has the state. It would be no less intolerable than impracticable, if, after every trial, there could be an investigation into matters affecting the qualifications of jurors which are readily ascertainable in advance. Such pro-

cedure would place a premium upon the neglect to ascertain whether a juror is qualified, for few men would challenge a juror if by their failure to do so they could gain a chance for a new trial in case of defeat. The public inconvenience is, moreover, a matter of far-reaching importance. If defeated parties were in all cases permitted to move for new trial on such grounds as that a juror had passed the age of seventy when he sits in a case, or has disposed of his property, or that he is lacking in any other of the several technical qualifications which do not affect his intelligence or fairness, no judgment would ever be safe from attack, and no trial could ever be confined to anything like well-defined or limited issues.''

In *United States* v. *Rosenstein* (34 F. 2d 630) the Circuit Court of Appeals, Second Circuit, New York, stated (p. 634): '' Failure to come within statutory requirements, such as citizenship, age, property, sex, and residence, which does not go to make up the essential qualities to enable a juror to perform his duties intelligently and impartially, may be waived by a defendant, even where such waiver consists of excusable want of knowledge, and even though he may have successfully objected to the juror sitting at the time of his examination. *Raub* v. *Carpenter*, 187 U. S. 159 * * *.''

Both on principle and the legal authorities cited, it follows relator's objections now presented by this writ of habeas corpus to setting aside the verdict of the jury and canceling the judgment of conviction are justified and must be sustained. A person is put in legal jeopardy when he is put on trial before a court of competent jurisdiction, upon information or indictment which is sufficient in form and substance to sustain a conviction and a jury has been charged with his deliverance. (Cooley on Constitutional Limitations [7th ed.], p. 467; *People ex rel. Meyer* v. *Warden*, 269 N. Y. 426, 428, *supra*.) When a defendant charged with crime has once been placed in jeopardy, he may not again be tried for the same offense. If there is no authority to again place relator upon trial upon the indictment, there is no right to restrain him of his liberty. (*People ex rel. Stabile* v. *Warden*, 202 N. Y. 138, *supra*.)

Illogical it may appear to laymen, since relator has been duly tried and convicted and sentenced to prison, and although granted a new trial, nevertheless, he must be discharged from custody for the reasons herein stated. The Constitution is the supreme law of the land and gives sanctuary under its beneficent provisions not alone to the rich, the powerful or great but to the weak, the poor and the sinner as well. The Constitution until

changed by an explicit and authentic act of the whole people is obligatory on all.

If Ostwald had secured a new trial after conviction upon his own application, he thereby would have voluntarily placed himself again in jeopardy and would not have been able to invoke the Constitution in his behalf for immunity. In a criminal case it is only where the accused has brought about the destruction of the first verdict that he can again be put upon trial for the same offense. (*People* v. *McGrath*, 202 N. Y. 445.)

Such is not the case here. The motion to set aside the verdict of the jury and for a new trial was made by the People. The paradox presented has merit in the law.

In the words of Chief Justice COOLEY, speaking of an accused person invoking plea of former jeopardy: " One trial and verdict must * * * protect him against any subsequent accusation of the same offense, whether the verdict be for or against him, and whether the courts are satisfied with the verdict or not." (Cooley on Constitutional Limitations [7th ed.], pp. 466–467.)

The writ of habeas corpus is sustained, and the relator discharged.