■ In the Matter of BLACKWELL WILLIAMS, Respondent, v. DIRECTOR OF THE LONG ISLAND HOME, LTD., Appellant.— In a habeas corpus proceeding, the appeal is from a judgment of the Supreme Court, Suffolk County, entered March 19, 1971, which granted the application and ordered the release of the

detained person from the custody of appellant to the custody of petitioner. Judgment reversed, on the law and the facts, without costs; writ dismissed; and the detainee is ordered remanded to the custody of appellant. This proceeding arises out of a civil commitment upon a judicial finding of insanity. Petitioner's application alleged that the detained person in question is no longer insane and that his release to petitioner's care and supervision would be a danger neither to society nor the detainee. Although no return to the petition appears in the papers, the position of appellant, as evidenced by its position at the trial, was directly opposed to the factual contentions of petitioner. The ultimate question is whether the evidence supports a finding that the detainee's release to the care and supervision of petitioner would not constitute a danger to society or the detainee. The evidence given at the trial conclusively establishes that the detainee, a 73-year old male, has been in and out of many hospitals as a result of mental illness directly related to chronic alcoholism of at least 30 years' duration. During this period he has been guilty of several violent acts or acts expressive of violence. The last such incidents occurred in October of 1968, when he struck a nurse with a chair, using enough force to break several ribs, and, just thereafter, wrote a series of letters in which he expressed the intention of killing the attorney handling his aged mother's affairs. Although all of the expert medical witnesses called by both sides agreed that this conduct evidenced mental illness at that time, they disagreed as to whether the detainee had recovered since the last episode. In general, the expert testimony on behalf of petitioner and the expert testimony on behalf of appellant were in conflict as to whether the detainee could be released to petitioner's care. Both the detainee and the petitioner testified. In the light of the entire record we cannot give any credence to the psychiatric evaluation that the detainee showed insight into his past problems and behavior. His testimony, as well as the testimony of appellant's experts, replete with concrete examples, overwhelmingly proves that the detainee has no insight into his past problems. The psychiatrist who testified that the detainee had recovered admittedly based his opinion solely upon a determination that the detainee had made a showing of relevant material insight. Since we have rejected this finding of insight we also reject the evaluation based thereon. To the extent that the testimony shows an absence of violent behavior since October of 1968, we are compelled by the weight of the evidence to attribute this to appellant's ability to isolate the detainee from situations of stress, rather than to any improvement in his internal situation. We also reject the testimony that the detainee's discharge from the hospital would not constitute a danger to himself or to society even though he is still mentally ill. Firstly, the psychiatrist expressing this viewpoint interviewed the detainee for only two hours. The testimony on behalf of appellant conclusively established that the detainee's mental illness was masked by his ability at the social amenities. We conclude from this characteristic of the detainee that any psychiatric determination made after only a two-hour interview is suspect, at least to the extent that we must rely on it to determine whether the detainee's release would constitute a danger. Secondly, the picture of the detainee as drawn by the testimony as a whole is that of a person who can cope only at the most superficial level of existence and whose actions are inconsistent when he is confronted with a situation involving the slightest degree of stress. Since prior experience shows that this inconsistency manifests itself in acts of violence, we are faced with the conclusion that the release of the detainee would constitute a danger to society as well as to himself. The fact that petitioner is willing to provide an environment as equally structured as that of a mental institution does not serve to justify the detainee's discharge. For all his good

intentions, petitioner is not trained in the field of mental health and admittedly he would have to rely on the help and advice of someone who is so trained. Yet the initial decision of when and from whom advice and care should be sought would be made by petitioner. In effect, petitioner would serve as a middleman between the detainee and any care and supervision which might prove necessary. The hazard inherent in such an arrangement can readily be envisioned when it is remembered that the detainee's violence caused harm even in the structured environment of the mental institution. Although we are reversing the determination of Special Term on substantive grounds, a limited discussion of appellant's argument based on procedural contentions is in order. Appellant contends that habeas corpus lies only to test the validity of a commitment and that it does not lie to test the claim that the detainee has recovered since the last order of commitment. Appellant contends that the Mental Hygiene Law contains specific provisions which must be followed before this latter claim may be judicially considered. In our opinion, habeas corpus is always available to test the validity of a present commitment on the grounds of insanity. This is a constitutional right which cannot be limited or impaired by statute. The fact that petitioner or the detainee may have had an alternative avenue of relief by way of a statutory remedy in no way alters the right to broach the issue by way of habeas corpus. Deviation from a psychiatric norm does not by itself constitute a reason for commitment to a mental institution. There must be a sufficient legal showing that this deviation constitutes a danger, either to the patient or to society. The mere fact that a person has once been legally committed does not thereby justify the invocation of a separate standard whereby he may be kept confined, although no longer dangerous. Rabin, P. J., Hopkins, Martuscello and Shapiro, JJ., concur; Munder, J., concurs in reversal of the judgment and dismissal of the writ of habeas corpus, but does so on the ground that habeas corpus, under section 426 of the Mental Hygiene Law, is available only to determine whether or not the detainee is presently mentally ill. When, as here, that fact is established, the writ should be dismissed and any further proceeding, such as occurred here to determine whether the detainee's discharge would be detrimental to the public or injurious to him, should be conducted pursuant to section 87 of the Mental Hygiene Law (see *People ex rel. Brunson v. Johnston,* 15 N Y 2d 647; *People ex rel. Longernecker* v. *Herold,* 24 A D 2d 681).