OPINION OF THE COURT
Bernard F. McCaffrey, J.
The petitioner, Grace Siveke, brought this writ of habeas corpus in order to compel the respondents, Janet Keena and Charles Keena, to return to the marital residence her husband, John Siveke, who is also the father of respondent, Janet Keena. The petitioner wife contends that she, not the stepdaughter, Janet Keena, is the proper and appropriate person to have custody of John Siveke.
The petitioner contends that her research revealed no case precedents or statutory authority to substantiate her contention that she, as the wife of John Siveke, has a paramount right to his care and custody over and above that of the respondent daughter.
The respondent, Janet Keena, contends that a wife’s right to care for her husband is not superior to the right of a daughter to care for her father and that the issue is not which relationship is closer, but whether the petitioner or respondent daughter is better able to provide for the care of John Siveke. Respondents too acknowledge that their research revealed no case precedents or statutory authority to substantiate their contention.
*5 Therefore, both counsel have stated that this is a matter of first impression.
John Siveke and Grace Siveke were married on June 24, 1971, and up to and including April, 1981 have resided together as husband and wife at 3 Circle Dale Road, Holbrook, New York.
On or about July, 1978 John Siveke was diagnosed as terminally ill with cancer, and since that time his condition has worsened to a point where he continues to suffer a loss of his faculties and require continuous nursing care. Grace Siveke has, for approximately two years with the aid of private duty nurses, provided her husband with home nursing care, not on a 24-hour basis, but rather for 14 to 16 hours per day. The nursing care is arranged and provided through the Comprehensive Health Care Nursing Service (hereinafter Comprehensive). The cost of said nursing care is financed through a long term disability insurance policy issued by Travelers Insurance Company, made available through John Siveke’s employment with Pan American Airways.
It is undisputed by all parties that John Siveke is incapable, because of his illness and infirmity, to adequately care for his property and his health.
At the outset, as a threshold issue, the respondents contend that a habeas corpus proceeding is an inappropriate remedy, in that such a proceeding may only be used in the case of detention of infants, or in the detention of persons held by State institutions. Thus, respondents urge that a conservatorship proceeding under article 77 of the Mental Hygiene Law is the proper remedy for the petitioner. Respondents claim that the detention of John Siveke by them is not illegal, and in the event the court does not dismiss the writ, it can go no further than determining whether the detention is legal or illegal and, if found to be the latter, require the petitioner to proceed anew under the appropriate provisions of the Mental Hygiene Law.
Habeas corpus is an ancient writ, existing as part of the common law of the State and it is not the creation of any statute, although the granting of the writ is regulated by statutory provisions. (25 NY Jur, Habeas Corpus, § 2; see CPLR art 70.)
*6 The writ of habeas corpus is a traditional means of inquiring into the legality of a person’s detention, it being a special proceeding used where a person is actually imprisoned or otherwise restrained in his liberty at the time the writ is issued to test the jurisdiction of the person or authority which presumes to restrain him. (People ex rel. Gordon v Murphy, 55 Misc 2d 275, affd 30 AD2d 358.)
Habeas corpus proceedings are not actions, but are special proceedings to inquire into the cause of a restraint or detention, and to enforce a civil right to be released from unlawful restraint, custody or confinement.
The statutory provisions regarding habeas corpus are found in CPLR article 70. CPLR 7001, dealing with the application of article 70, states in pertinent part as follows: “the provisions of this article are applicable to common law or statutory writs of habeas corpus and common law writs of certiorari to inquire into detention.” CPLR 7002 (subd [a]), dealing with the petition by whom a writ for habeas corpus may be made, states in pertinent part as follows: "A person illegally imprisoned or otherwise restrained in his liberty within the state, or one acting on his behalf *** may petition without notice for a writ of habeas corpus to inquire into the cause of such detention and for deliverance. A judge authorized to issue writs of habeas corpus having evidence, in a judicial proceeding before him, that any person is so detained shall, on his own initiative, issue a writ of habeas corpus for the relief of that person.” (Emphasis supplied.) It should be noted that the above statutory provisions do not contain any qualifying language that would restrict the application of the article to infants or persons held by State institutions. Had the Legislature so intended to restrict the application of CPLR article 70 to such classes of people, it would have done so by use of the appropriate qualifying language. A review of certain case law is further indication that the utilization of the writ is not to be so restrictively construed. For example, the Court of Appeals in Hoff v State of New York (279 NY 490, 492) simply said: “The right of persons, deprived of liberty, to challenge in the courts the legality of their detention is safeguarded by the Constitution of the United States and by the Constitution of the State.” Likewise, in *7 the Supreme Court, in People ex rel. Ostwald v Craver (188 Misc 5, 7, affd 272 App Div 181), the court aptly said, with the affirmance of the Appellate Division: “Every person who is unlawfully restrained of his or her liberty has an absolute right to test the legality of unlawful detention by *** habeas corpus.”
As to respondents’ contention that a conservatorship proceeding under article 77 of the Mental Hygiene Law is the proper remedy for the petitioner, the court points out that such a proceeding under said article 77 may be a proper remedy; but aside from it being preferred over a proceeding brought pursuant to article 78 of the Mental Hygiene Law (Committee of Incompetent or Patient) there is nothing in the statute that makes article 77 an exclusive remedy. It should be noted that the availability, to one unlawfully detained, to relief by way of statutory remedy other than habeas corpus does not in and of itself preclude the granting of habeas corpus. (See 25 NY Jur, Habeas Corpus, § 6; Matter of Williams v Director of Long Is. Home, 37 AD2d 568; People v Schildhaus, 8 NY2d 33.) Habeas corpus, as an alternative remedy, may be refused in the exercise of discretion where full relief may be obtained in other more appropriate proceedings. (People ex rel. Davis v Arnette, 57 AD2d 562, affd 44 NY2d 877.)
In the case at bar, it would be an abuse of discretion to dismiss the writ before the court and require petitioner to commence a proceeding under another statutory provision. The condition of John Siveke makes time of the essence here, requiring that substance be placed over form to allow the most expeditious handling of the matter.
Notwithstanding that a writ may have limitations, namely, that its “sole purpose * * * is to inquire into the cause of imprisonment or restraint of the person; and the sole inquiry is whether the mandate, by virtue of which the person is detained, is void” (People ex rel. Tatra v McNeill, 19 AD2d 845, 846), the court does not view this as limiting the court to a finding that the writ should be granted or denied. The statute (CPLR 7002, subd [a]) calls for the court, “to inquire into the cause of * * * detention and for deliverance” (emphasis added). The Supreme Court, by virtue of its general equitable jurisdiction, may order and *8 direct as to custody and control of infants within the State, and may exercise its jurisdiction to do so either upon writ of habeas corpus or upon petition. (People ex rel. Harris v Commissioner of Welfare of City of N.Y., 188 Misc 919.) By virtue of its general equitable jurisdiction and the mandate of the writ inquiry proceeding itself, this cov.rt ought to be able to do no less in the case at bar.
The law recognizes the special status and sanctity of the marriage relationship and the duties and obligations which flow from that relationship. Part B of section 236 of the Domestic Relations Law, in recognizing the peculiar partnership relationship inherent in marriage, gives a spouse, by virtue of that relationship and his or her contribution to that relationship, a right to claim upon dissolution of the marriage an equitable interest or share in the property of the other spouse in all marital property, notwithstanding title may be held solely by that other spouse. Section 32 of the Domestic Relations Law also provides, as a general proposition and rule, that the wife shall be liable for the support of her husband, and that the husband shall be liable for the support of his wife. CPLR 4502 (subd [b]), in recognizing the special relationship enjoyed by man and wife, provides a husband and wife with a special privilege of confidential communication existing between them that is not found to exist between parent and child. The policy behind this privilege is to protect and strengthen the marital bond.
The laws of descent and distribution also recognize a privileged status of the relationship between husband and wife. EPTL 5-1.1 dealing with a spouse’s right of election, and EPTL 4-1.1 dealing with intestate distribution, both place a spouse in a superior position to a child with respect to descent and distribution. Of course, the proposition that the relationship of husband and wife is special and unique finds support in scripture as well, wherein we are told, “Therefore a man leaves his father and mother and cleaves to his wife, and they become one flesh.” (Genesis, ch 2, verse 24.)
We look to bodies of law such as articles 77 and 78 of the Mental Hygiene Law for direction, and find additional analogies to help us.
*9 There appears to be some deference given to unanimous wishes of an incompetent’s family in the selection of a committee, but there is no positive rule of law compelling appointment of the next of kin as committee for an incompetent, nor any absolute subordination of strangers to relatives, but rather, again, the paramount consideration appears to be the best interest and welfare of the incompetent. (See Matter of Eichner[Fox], 102 Misc 2d 184 [Meade, J.]; Matter of West, 13 AD2d 599.)
At a hearing before this court, petitioner and respondents testified, as did several private nurses who had cared for John Siveke. It was agreed by all parties that John Siveke was unable to testify at said hearing.
The testimony at the hearing reflected the type of care rendered to John Siveke by his wife, and some of the conditions and problems at the marital residence, during which time there was private nursing care on a 14- to 16-hour basis. Although there were isolated occasions when petitioner refused the nurses’ admittance to the marital residence, or had called to advise them not to come for duty, there was no credible testimony reflecting any interference by Mrs. Siveke with the private nursing care rendered to her husband. The fact that petitioner has had a drinking problem was admitted.
There is no question but that respondent, Janet Keena, is in a stronger physical condition to handle her father, who is a rather large man, than is Mrs. Siveke, who, though only 57 years of age is rather slight in stature and frail in appearance. Mrs. Keena is supported by her husband, Charles Keena, in her desire to care for her father at their residence.
The well-being of John Siveke and the rights of all concerned are the paramount concerns of the court, and that, too, appears to be the concern of the parties to this proceeding. It is quite apparent that John Siveke is loved by his wife, the petitioner, and by his daughter, Janet Keena, a respondent in this proceeding.
No testimony was offered by either party in the form of medical experts, such as doctors who have examined and/or treated John Siveke.
*10 The court notes that, although there is friction between Mrs. Siveke and her stepdaughter, Janet Keena, it appears that their relationship is not one of hostility born of dislike or resentment; and that this friction is due to each one’s concern for John Siveke. Also, though Mrs. Siveke has had difficult periods during the past two and one-half years, it appears to the court that she has the courage to recognize her problems and, in fact, has sought counsel with Alcoholics Anonymous; and her desire and will to care for her husband, as is her claimed right to do, is not diminished by any problems which may have beset her.
The testimony also reflects that the key here lies in the procurement of adequate nursing care, which would free the petitioner from the difficulties of having to physically assist John Siveke. It has been established that there is adequate insurance coverage under the long-term disability policy to provide for 24-hour private duty nursing care.
The testimony also reflects that restrictions were placed upon the visitations permitted to Janet Keena during the time John Siveke was at his residence in Holbrook, New York. No doubt this, plus the fact she maintains a part-time job and is concerned with raising her own family, accounted for the fact that she visited her father only approximately once per month.
All of the above reflects that the detention of John Siveke by the respondents in this case, although well intentioned, is without authority and, therefore, illegal.
There has been no testimony that the petitioner is in any way dissipating the property or assets of John Siveke. Significantly, in the court’s view too, is the admission at the hearing by respondent, Janet Keena, that, had petitioner attempted to intervene in the discharge of John Siveke to respondent’s residence from the Smithtown Hospital, said respondent would have acquiesced and let John Siveke return home with petitioner, rather than involve him in this kind of “tug-of-war”.
Notwithstanding the fact the law appears to be devoid of any opinions or statutes as to whether a wife or daughter Would have the paramount right of custody, this court holds that, by analogy of the law and the facts of this case, *11 the petitioner wife, and not the respondent daughter, has the paramount right of the custody and care of John Siveke, subject to the following conditions:
(1) Twenty-four hour nursing care be arranged and maintained for the care of John Siveke through Comprehensive.
(2) Petitioner, Grace Siveke, must regularly attend the meetings of Alcoholics Anonymous, no less than two times per week.
(3) Liberal visitation be permitted to respondents — said visitation to include the grandchildren. If the parties are unable to agree upon such visitation, the court shall fix same.
(4) Respondent daughter shall have full and free access to medical reports regarding John Siveke and his care and progress.
The court directs that arrangements be made forthwith to transfer John Siveke to the care and custody of the petitioner wife.
Petitioner’s request for counsel fees is denied.