OPINION OF THE COURT
Damian J. Amodeo, J.
Tara P. (date of birth: Apr. 7, 1973) brings this writ of habeas corpus challenging her confinement in a facility operated by the New York State Division for Youth (DFY) in Syracuse, New York.
In determining this application the court has received and considered the following: writ of habeas corpus; petition for writ; order of transfer; order to show cause; memorandum of law in support of writ dated September 11, 1989; memoranda of law submitted by Peter Maroulis, retained counsel for relator; respondent’s reply affirmation and exhibit A; respondent’s memorandum of law, as well as the court record in the person in need of supervision proceeding.
BACKGROUND
On February 10, 1989 a petition was filed pursuant to *515 article 7 of the Family Court Act seeking a determination that Tara P. was a person in need of supervision (PINS). The application, made by the assistant principal of a local high school, was based upon allegations that Tara had been illegally absent from school on numerous occasions. At the time of the alleged absences Tara was under 16 years of age. On March 27, 1989 Tara admitted the essential allegations of the petition in open court and a predispositional probation investigation was ordered. Partially on the basis of the admission to truancy, an additional PINS petition, filed by Tara’s mother alleging that Tara had run away from home and was otherwise incorrigible, was withdrawn.
A dispositional hearing was held on June 12,1989. Based on the content of the probation report and other matters made part of the record during the proceedings, Tara was placed on probation for 12 months. The conditions of probation included provisions that Tara attend school regularly and that she have no contact with Robert C., who had been described in the probation report as abusive, a potential threat to Tara, and an individual who was himself on probation. Additionally, residence in a DFY group home was authorized, with the condition that Tara abide by all of its rules and regulations.
It should be noted that Tara was represented by a Law Guardian throughout this matter and no objection was made to the fact-finding determination nor was an appeal taken from the terms of dispositional order, which she now seeks to avoid.
During the month of April 1989, Tara became pregnant. The putative father of the expected child is Robert C. On July 25, 1989, with her mother’s consent, Tara married Mr. C. In August 1989 Tara was placed in a DFY group home in Syracuse, New York (Urban Home for Pregnant Girls). The foregoing events were not made known to the court until this writ was filed in September 1989.
PRESENT APPLICATION
Tara challenges the legality of her confinement on several grounds. First, she argues that because of her marriage to Robert C. she is emancipated and therefore no longer subject to control by DFY. She also asserts that because she is now 16 years old she is no longer required to attend school, and that it is an abuse of discretion for the court to order her to do so and to continue her custody on that basis. Finally, Tara *516 argues that her First Amendment right to freedom of association is being violated by her detention in a group home with a direction that she not have contact with her husband, Robert C.
Respondent argues that the dispositional order was properly issued as a valid exercise of Family Court’s authority; that relator, who by her own actions in associating with Mr. C. flagrantly violated this court’s dispositional order, should not be allowed to benefit from her wrongful conduct; and that if emancipation by marriage puts relator beyond the court’s powers, then any respondent in a PINS proceeding could marry or otherwise become "emancipated” to defeat the purposes of the Family Court Act and avoid the burden of directives issued pursuant to authority granted under article 7 of the Family Court Act.
APPLICABLE LAW AND CONCLUSIONS
The only question before the court in a habeas corpus proceeding is the legality of the mandate by which the relator is confined (People v Gersewitz, 294 NY 163; People ex rel. Tatra v McNeill, 19 AD2d 845; Matter of Siveke v Keena, 110 Misc 2d 4).
First, the court rejects the argument that the disposition is unlawful because it was based on the truancy of a minor, now 16 years of age and no longer required to attend school. There can be no dispute that Tara was properly adjudicated a PINS. If it is established that the conduct giving rise to the need for supervision occurred prior to a child’s 16th birthday, the authority of Family Court to supervise that person may continue beyond age 16 (Family Ct Act § 714 [a]; Matter of Wendy C., 133 AD2d 904; Besharov, Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 714, at 28). This is true even where the underlying petition alleged truancy and the dispositional order requires that the child attend school (Matter of Wendy C., supra). This court adopts the reasoning and holding of the Appellate Division in Wendy C., as a better statement of the law than that set forth in Matter of Terry UU (52 AD2d 683), relied upon by relator. In this court’s view, the holding in Terry UU (supra) has been seriously undermined, if not implicitly overruled, by the more recent ruling in Wendy C. (supra).
In a PINS proceeding the court has the power to make "appropriate order[s] of disposition” (Family Ct Act § 711). A *517 dispositional order may include provisions which require an individual to perform acts which he/she would not otherwise be legally required to do. For example, there is no law requiring a person to do community service. Yet, there can be no doubt that the State has the power to require such service as part of a sentence of probation or conditional discharge (Penal Law § 65.10). Similarly, Family Court may set terms and conditions of behavior for children in need of supervision as part of a rehabilitative disposition. If relator had complied with the Education Law prior to her 16th birthday, she would not now find herself in this position. Having violated the Education Law, her present age does not, by itself, place her beyond the jurisdiction of this court or the terms of any supervision which it might direct (Matter of Amy Beth G., 136 Misc 2d 85).
It must also be noted that during the dispositional hearing the probation report received in evidence contained information relating to Tara’s entire life situation, including her failing grades; evidence of self-mutilation; lack of job experience; family alcohol and drug problems; lack of control by her mother; possible abusive relationship with Mr. C.; and her need for structure, supervision, education and psychological counseling. After reviewing this report and considering all of the circumstances of Tara’s case, the court issued a dispositional order which it felt best addressed those circumstances (Family Ct Act §§ 750, 754). In this regard the case at bar is analogous to Matter of Ellie OO (85 AD2d 841). Although the fact finding in that case was based on truancy, the court recognized that the disposition was tailored to deal with "problems * * * far more significant than mere failure to attend school”. (Supra, at 841.) As an aside the court notes that Tara has been progressing well and her prenatal needs are being provided at her present residence.
Relator also contends that the continued validity of the dispositional order should be viewed in light of the holding in Matter of Rogers (36 Misc 2d 680). That court held that a married child may not be required to attend school with other minors because of the impropriety of her association with other children of such "young and impressionable” ages (supra, at 681). Such reasoning is both unpersuasive and outdated.
As to Tara’s alleged emancipation, the court finds that her marriage to Robert C. was in direct violation of this court’s dispositional order. She married without the court’s *518 knowledge or consent; she never made an application requesting a modification of the dispositional order; and the court had no opportunity to review the facts and circumstances of her case to determine whether an amendment was appropriate. To allow her to now use her marriage to collaterally attack the dispositional order and bootstrap her argument that she should be free from the court’s control would set an unsound and dangerous precedent. To hold otherwise would permit any minor subject to a PINS petition, who was unhappy with the disposition, to marry or otherwise "emancipate” herself to avoid the court’s authority.
In addition, the court questions the propriety of the consent to marry given by relator’s mother. Not only was her child under the jurisdiction and control of this court and the DFY but the mother knowingly aided her daughter in violating an order of this court. While other avenues are open to the court in regard to the mother’s conduct, it elects to defer any such action at this time.
The court finds no basis for relator’s argument that her constitutional right of free association is being violated. In the context of a PINS proceeding this court has the authority to restrict an infant’s contact with certain individuals as a condition of probation for rehabilitative purposes (22 NYCRR 205.66). An analogous criminal statute, which authorizes limitation on association with certain individuals, has been held to be constitutional (People v Bailey, 60 Misc 2d 283; People v Johnson, 118 Misc 2d 983). Courts have broad discretionary powers in setting conditions of probation (People v Oskroba, 305 NY 113; People v Johnson, supra; Malone v United States, 502 F2d 554, cert denied 419 US 1124) and "freedom of association may be restricted if reasonably necessary to accomplish the essential needs of the state”. (Malone v United States, supra, at 556.) A probation condition remarkably similar to that imposed in the case at bar was upheld in People v Howland (145 AD2d 866). There the defendant was sentenced to five years’ probation and specifically prohibited from residing with the man with whom she later became pregnant and married. The court affirmed the restriction imposed on defendant, finding that it was reasonably related to defendant’s rehabilitation. Similarly, in the instant case, based on evidence adduced at the dispositional hearing, there were valid reasons to restrict Tara’s contact with Mr. C. The probation report noted that Mr. C. was on probation himself, that he was an "abusive individual” and that Tara might be an object *519 of his abuse. In addition, the onset of Tara’s problems, including her truancy from school, coincided with her involvement with Mr. C.
In any event, the court finds that this latter issue is now moot. Respondent has consented to allow relator contact with Mr. C., subject to such terms and conditions as prescribed by the DFY group home. The court approves this modification, as long as such contact is monitored by the DFY, and directs that respondent submit an order to this effect, on notice to relator.
HOLDING
For the foregoing reasons the petition of Tara P. is denied in all respects and her application is dismissed on the merits.