OPINION OF THE COURT
Robert L. Estes, J.
The Commissioner of Social Services has filed a petition requesting an extension of placement, under Family Court Act § 355.3, and a specific direction from the court to the respondent that he attend school until age 18 and engage in treatment recommended by the Delaware County Alcoholism *92 Clinic. Having been placed pursuant to Family Court Act § 353.3 (1) in care and custody of the petitioner on December 21, 1988, the respondent determined in or about early May of 1990, at age 17, to drop out of school in defiance of the petitioner’s directives.
Whether or not the court may order the respondent to attend school at the age of 17 presents a question more difficult than would at first appear.
Under the Education Law, a person is required to attend school only until attainment of the age of 16. (Education Law § 3205.) A 16 year old who is not adjudicated a juvenile delinquent or a person in need of supervision can freely choose, without legal consequence, whether or not to drop out of school to engage in employment, start a business, or engage in some other activity without attending school. Constitutional and statutory limitations of authority of the Family Court notwithstanding, the petitioner argues that the court may deprive an adjudicated juvenile delinquent of the choice of whether or not to continue attending school upon the attainment of the age of 16 years.
In cases involving persons in need of supervision, it has clearly been held that Family Court may direct a respondent to attend school until attainment of the age of 18 years. (Matter of Wendy C., 133 AD2d 904.) The case has recently been followed in People ex rel. Tara P. v DiStefano (146 Misc 2d 513).
In an earlier case, however, it was squarely held that Family Court abused its discretion by directing a placement for a period which would exceed by more than a year, attainment by the respondent of the age of 16 years. That age was described by the court as limiting "the time appellant was required to attend school” (Matter of Terry UU, 52 AD2d 683, 684).
There being no mention of Terry UU (supra) in Wendy C. (supra), it is difficult to reconcile the cases. In each case, however, the person subject to the order had been found to have failed to attend school regularly while under the age of 16 years, in violation of the Education Law. The earlier case, Terry UU, suggests that Education Law § 3205 is controlling, whereas the court in Wendy C. found authority for Family Court’s action at section 714 of the Family Court Act. Except for cosmetic changes required to be made to section 714 when article 3 of the Family Court Act was enacted (L 1982, ch 920), the substantive provisions of Education Law § 3205 and Fam *93 ily Court Act § 714 were unchanged during the interval between the cases.
Nevertheless, the three cited cases contain common elements which distinguish each from the present case. All were PINS cases, in which the findings related to acts which occurred prior to attainment by the respondent of the age of 16. The present case involves neither a person in need of supervision, nor failure to attend school prior to attainment of the age of 16. The respondent in this case determined to quit school upon attainment of the age of 17, more than 16 months after commencement of his placement. His placement was occasioned by a finding that he committed acts while under the age of 16 which, if committed by an adult, would constitute a crime, and none of which related to attendance at school.
There is no question that this court retains authority over the respondent’s placement during his minority. (Family Ct Act § 355.3 [6].) Thus, the reasoning of Wendy C. (supra) might arguably be extended to authorize the court to direct the respondent to attend school. The court concludes, however, that Wendy C. cannot be so extended, because unlike the respondents in each of the three cases herein cited, the respondent’s status and the ensuing dispositional order were rendered under article 3 not under article 7 of the Family Court Act and were in no way related to an alleged failure to attend school as required by the Education Law.
The court holds that it has no authority to order the respondent to attend school against his will. Even if the court had such authority, it would not order the respondent to attend school for the reasons hereinafter stated.
The justification for seeking the order mandating attendance, as alleged in the petition, is not that attendance at school will further the respondent’s best interest or foster protection of the community (Family Ct Act § 352.2 [2]). The petition alleges only that his failure to attend school as directed by the Commissioner of Social Services is illegal. Quite to the contrary, his failure to attend school is neither a violation of the Education Law nor of any court order. His failure is, however, contrary to directives of the Commissioner in loco parentis, and contrary to an agreement whereby the Commissioner agreed to allow certain privileges in consideration of the respondent’s agreement to attend school and therapy sessions. According to the testimony, the Commis *94 sioner desires to have the court order the respondent to attend school and to engage in treatment so that the petitioner can hold up to the respondent possible placement with the Division for Youth as a consequence of violation of an order of the court which directs the conduct requested by the petitioner.
The Commissioner has administrative authority to place the respondent in a group home or other setting providing the high level of structure that is clearly necessary for the respondent. (Matter of D.J., 102 Misc 2d 701.) The Commissioner has elected, instead, to release the respondent from the somewhat structured setting of a traditional foster home, to the care of parents whose inability to provide such structure is well documented and to request an order which he supposes might be better respected by the respondent because it emanates from a judicial authority instead of an executive authority.
In March of 1989, the respondent was moved from a traditional foster home to an agency-operated foster home, because of the enhanced structure and supervision that the latter would provide. Six months later, early in September 1989, the foster parents operating that home moved their family from the agency-operated home in Sidney Center, New York, to the agency-operated home in Bloomville, New York, but for some reason unexplained in the agency records submitted to the court, the respondent was not moved with them. Instead, he was left behind in Sidney Center, in a foster home which did not have foster parents, but only an adolescent worker. There he remained until November 4, 1989, when he got into trouble for disorderly conduct and marihuana possession, while on a "supposed supervised visit home”, according to the UCR Reassessment and Service Plan Review dated December 1989. After serving four days in jail, he was released to a traditional foster home on November 8, 1989, having received a conditional discharge from a local criminal court. One of the conditions of the discharge is that he engage in treatment for substance abuse — the same treatment which the petitioner would have this court order.
The reports of the mental health clinic generated between November of 1989 and January of 1990 document the need for additional structure for the respondent, the loss of which is documented in the UCR Reassessment and Service Plan Review dated December 1989. The same plan also states, without the explanation called for at paragraph 4 (b) thereof, that the permanency planning goal for the respondent was changed from "discharge to parent” to "discharge to independent *95 living”. In a UCR Reassessment and Service Plan Review dated June 1990, there is another unexplained change of the permanency planning goal, from "discharge to independent living” to "discharge to parent”. The particular goal is stated to be discharging the respondent from foster care and returning him to his parents’ custody on September 1, 1990.
The Commissioner’s caseworker testified under examination by the Commissioner’s attorney, that the Department of Social Services is incapable of managing the respondent outside of a foster home setting, and that the respondent was released from his foster home and sent home on extended visitation because of his failure to follow through with recommendations of the Department of Social Services that he attend alcoholism treatment, that he attend school, and that he follow through with the bargain that he made with the Commissioner. The witness also testified to the inability of the Department of Social Services to effectively manage the respondent in foster care in the absence of a court mandate that the respondent engage in a treatment program and attend school. The latter claim wholly ignores the Commissioner’s administrative power and duty to place the respondent in a residential or other suitable, properly structured program. (Social Services Law § 398 [3] [c]; [6] [g].) No evidence was offered by the petitioner to establish that such alternative administrative measures were explored, or even considered, before filing the petition. Moreover, the petitioner has failed to establish in what respects, if any, the ability of the Department of Social Services to "manage” the respondent would be enhanced if he secures the order which he seeks.
Although the Commissioner has not framed his petition in terms of the respondent’s best interests, the court finds that it clearly would serve the respondent’s best interests to attend school or secure a general equivalency diploma (GED), even though the law does not require him to do so. Nevertheless, in view of his determined decision not to attend school, the court finds that it would not be in the respondent’s best interests to be ordered by the court to attend school, which he was failing, against his wishes.
The Legislature clearly has not raised from 16 years, the age below which Family Court is authorized to intervene under article 7 of the Family Court Act when a child fails to attend school as required by the Education Law. (Family Ct Act § 712; see, Besharov, Practice Commentary, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 712, at 19; *96 Matter of Patricia A., 31 NY2d 83.) It is not a proper function of this court to undertake such a legislative task in the guise of an adjustment to an order of placement. In the opinion of this court, it was never intended by the Legislature to vest in an agency with whom a child might be placed, authority to pursue remedies in the nature of those available under article 7 of the Family Court Act, while not affording such authority to parents.
Considering the respondent’s circumstances since being released from the foster home by the petitioner, the respondent has made reasonable plans for his future by determining to pursue a GED and engage in an 18-month vocational study relating to automobiles and diesel mechanics, while living in the home of a friend’s parents, and pursuing gainful employment.
He has recently reengaged in treatment with the alcoholism clinic, and presents a sincere resolve to enter a residential treatment setting. His attendance in residential treatment will be in jeopardy if foster care is discontinued. His Medicaid coverage has expired. The assistance of his foster care caseworker, whose personal dedication to the respondent is evident, will be unavailable to assist the respondent in securing medical assistance if placement is terminated.
The caseworker has been advised by the Medicaid unit of the Department of Social Services that because the respondent is no longer living in a foster home, the respondent’s parents must sign papers to extend the respondent’s Medicaid coverage although his placement with the Commissioner continues. The respondent appears to be living independently, yet the Department of Social Services evidently requires that the respondent’s parents take the initiative to extend their own Medicaid coverage to add the respondent. This action was taken, notwithstanding a letter to the respondent’s parents from the Department of Social Services dated December 18, 1989 which observed that his parents "are not willing to work with the Department to further [the respondent’s] best interest.”
It is evident that residential treatment is in the interest of the respondent, not only to avoid service by the respondent of additional time in jail for violation of his conditional discharge from the Village Court, but also to assist him in effectively addressing the attitudes and circumstances which have led to his past substance abuse. Such treatment is the *97 Commissioner’s responsibility pursuant to subdivision (3) (c) and subdivision (6) (c) of section 398 of the Social Services Law, during the duration of the placement. The Commissioner should not abdicate that responsibility by allowing the respondent’s Medicaid coverage to lapse and by shifting the responsibility for renewal of that coverage to parents who have been determined by the agency to be ineffective and uncooperative.
To assure, as a minimum, that casework counseling services will continue to be delivered to the respondent, the court will direct that the placement be continued, through the attainment by the respondent of his eighteenth birthday. The petitioner’s requests for specific directives by the court to the respondent will be denied, for the reasons previously stated in this decision.